No. 32,739

DAISY I. SCOTT, *Appellee,* v. THE NATIONAL RESERVE LIFE INSURANCE COMPANY, *Appellant.*

(56 P. 2d 76)

Opinion filed April 11, 1936.

*George F. Beezley,* of Girard, *Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the appellant.

*P. E. Nulton* and *R. L. Letton,* both of Pittsburg, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action by the beneficiary in a life insurance policy against the insurance company which issued the policy on the life of her husband, now deceased.

The petition alleges the usual points for recovery upon such a policy, and the answer and cross petition admits the allegations of the petition in effect, and then alleges the tender of the returned premium to the plaintiff and her refusal to accept it, and that the insured at the time he made application for the insurance and at the time it was issued and delivered to him knew that he had made

application to another life insurance company for insurance and that such application had been refused, and also knew that he was not in good health and free from disease and injury at the time of his application to the defendant company, and in spite of such knowledge on his part made false and fraudulent answers on his application for insurance, and the defendant did not know these answers to be false and fraudulent, and would not have issued the policy and delivered it if it had been so informed, and that the answers were made with the intent to defraud the defendant, and defendant tendered into court the amount of the premium.

Defendant in its cross petition set up two questions in the application which it alleges were falsely and fraudulently answered by the insured with the intention of defrauding the defendant insurance company, and defendant prayed that the policy be surrendered, rescinded and set aside. To this the plaintiff replied admitting the tender of the returned premium and admitting the answers to the questions, 6A and 10, as set up in the cross petition, but denied each, every and all of the allegations of the answer and cross petition, and specifically denied that the insured made fraudulent answers and representations, but alleged that the defendant was fully apprised and informed of all the facts material to the inducement and procurement of the contract at the time he, the insured, made the application.

The trial court held that the burden of proving the fraud alleged in the answer and cross petition was upon the defendant. The defendant introduced its evidence. At the close of the evidence of the defendant the plaintiff moved the court to direct the jury to render a verdict in favor of the plaintiff. The defendant also moved for an order directing the jury to render a verdict in favor of the defendant. The court sustained the motion of the plaintiff and overruled the motion of the defendant. A directed verdict was rendered in favor of plaintiff for the face of the policy with interest. There were several errors alleged in the introduction of testimony and the defendant moved for a new trial, which was overruled, from all of which rulings the defendant appeals.

Before considering the facts and testimony in the case we may briefly refer to the legal distinctions that are discussed in the briefs as between fraud and misrepresentations. A mere misstatement of the actual truth unintentionally made and in good faith may not amount to fraud. It was said in *Mutual Life Ins. Co. v. Wiswell*, 56

Kan. 765, 44 Pac. 996, that a mere misstatement, unless willful and fraudulent, will not avoid the policy in the absence of a warranty of the truth of the statement. The following statement from 14 R. C. L. 1021 is helpful in making a proper discrimination:

"A misrepresentation in insurance is a statement of something as a fact which is untrue, and which the assured states, knowing it to be untrue, with an intent to deceive, or which he states positively as true, without knowing it to be true, and which has a tendency to mislead, such fact in either case being material to the risk. . . . To render the policy voidable a false representation must relate to a material matter, and must have been relied on by the insurer. A fair test of the materiality of a fact is found in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of affecting the insurance, as substantially increasing the chances of the loss insured against so as to bring about a rejection of the risk or charging an increased premium."

Many of the decisions cited have to do with warranties, which are not in any way involved in this case, because the contract between the applicant and the insurance company provides that—

"This policy, and the application herefor constitute the entire contract between the parties hereto. All statements made by the insured as the basis for the contract shall, in the absence of fraud, be deemed representations and not warranties. . . ."

The question of good faith is also discussed, which of course is proper in the determination of the existence of fraud; likewise innocence and lack of knowledge. Another feature discussed is the knowledge of the agent being that of the company and the sufficiency of information to put it upon inquiry.

Another feature of the application is mentioned and deserves consideration. It is in the nature of an agreement made as a part of the application in which the applicant said over his signature that "The statements and answers are full, complete and true, and are offered by me as the basis for the proposed contract for insurance." "I hereby certify that I have examined and accept the provisions of the policy applied for, and said company shall not be held responsible for agent's statements at variance therewith." Immediately following the answers to the questions the insured stated: "I hereby certify that I have read and find correctly recorded as made by me each of the above statements and answers, and I renew and affirm the declaration as to such statements and answers made by me in Part I of this application."

There is no conflict of evidence, and the sole question is, Does the testimony given establish fraud, the burden of proof that it did es-

tablish fraud being assumed by the defendant? This is limited in the allegations of the defendant to the answers given to two questions, 6A and 10. These questions and answers thereto are as follows:

"6A. Has any life insurance company ever examined you either on an application for insurance or for any other reason, without issuing a policy? (If so, state name of company and give particulars.) A. No.

"10. Are you now in good health, free from diseases and injury? A. Yes."

As to the answer to the first question, it is conceded to be incorrect. But, of course, being incorrect or untruthful will not make it fraudulent. A fraud must never be presumed. The plaintiff insists that the deceased, Doctor Scott, gave "a full, complete and true answer" to this question to the appellant's agent, E. G. McCalester, and to show plaintiff's reason therefor we quote the following from plaintiff's brief, pages 23 and 24:

"Mr. McCalester testified that he went over this application with the insured prior to its being executed, that Doctor Scott told him that he had previously made an application to and had been examined by the Mutual Benefit Life Insurance Company of New Jersey. Mr. McCalester testified that the insured told him that no policy of insurance was issued by the Mutual Benefit Life Insurance Company on that application. This we submit was a true and correct statement by the insured to the appellant's agent of the facts sought to be determined by this question. These statements made by the insured were responsive to the question and gave to the appellant, by and through its agent, E. G. McCalester, whose agency and authority has not in any stage of the proceedings been questioned, all the information demanded by the question. At the time of this conversation between McCalester and the insured, the insured asked McCalester his opinion as to the proper answer to that question in view of the facts just detailed and McCalester in spite of those facts advised the insured to answer question 6A 'No.'"

Of course this reasoning seeks to place the burden of making the incorrect answer on the agent of the defendant, and through him on the company. One thing stands out, why an intelligent and professional man, like the applicant, after stating in the affirmative the only two things involved in the question should ask the agent or any person "his opinion as to the proper answer" to that question. So the agent at least did not volunteer the false answer. The above-quoted extracts from the application show that the applicant read and verified the answers given as being true, and exonerated the company for the agent's statements at variance therewith.

When McCalester, the agent, was on the witness stand as a witness for the defendant he identified only the application, but in

cross-examination the plaintiff brought out this conversation between him and the applicant with reference to the answer to question 6A, part of which is stated above. The further evidence furnished by this witness does not go to the question of the incorrect answer given to this question but tends to furnish a reason for the applicant wanting to find other than an affirmative answer to this question. The following is one of the answers given by this agent on cross-examination:

"Doctor Scott told me how he had made an application in another insurance company, in a company that he had $10,000 insurance with, and that he had figured on taking out $2,000 or $3,000 more, but they had failed to do just as they started in to do and he had canceled the application."

The first witness called by the defendant was a brother of Doctor Scott, who testified that he, as agent for the Mutual Benefit Life Insurance Company, of Newark, N. J., had taken the application of his brother for insurance in that company on February 10, 1934, had sent it in and received a copy of a letter from the company about it, and told his brother in March, 1934, that his application had been declined by the company, and in June, 1934, he wrote to the defendant company asking if he might take an application from his brother for a policy in the defendant company.

An officer of the Mutual Benefit Life Insurance Company in a deposition testified that the application of Doctor Scott had been rejected on March 3, 1934. On March 19, 1934, Doctor Scott wrote a letter to the Mutual Benefit Life Insurance Company at Newark, N. J., of which the first paragraph is as follows:

"I have had some correspondence with your general agent, Mr. Poindexter, at Wichita, Kan., relative to my policies numbers 87 9631-2, since you declined to issue the smaller policy, that I might have the benefit of the accumulated dividends. He also declined to answer my inquiries. Hence this request to the home office."

The second paragraph speaks of a test of urine, and the third paragraph asks about withdrawal of dividends on his present policies.

The secretary-treasurer of the defendant company testified that the answer to question 6A was material and any application, where it was answered in the affirmative, would be rejected by the company. In *Steele v. Woodmen of the World,* 115 Kan. 159, 222 Pac. 76, it was held:

"Questions asked upon an application for a beneficiary certificate as to whether the applicant ever failed to obtain life, accident or health insurance

applied for, and whether any physician had ever declined to recommend applicant for life, accident or health insurance, are material, and false answers given by him to such questions operate to annul the certificate." (Syl. ¶ 4.) (See, also, *Glasgow v. Woodmen of the World*, 107 Kan. 354, 191 Pac. 470.)

We think this false answer to question 6A was a material one which would change the attitude of the company as to the risk proposed. The applicant solicited an answer after giving the affirmative answer himself. He confirmed the false answer in the contract following the same. The fraudulent purpose and design is shown by his concealing the truth even from the agent by making another false statement to him when his own letter, the testimony of his brother and the records of the New Jersey company showed conclusively that he knew differently. Of course it takes more than falsehoods to constitute fraud, but among the many elements involved therein are concealment, lack of good faith, financial advantage to self and disadvantage to others. There are enough of these to establish fraudulent intent and purpose in making this false answer to enable us to hold that the defendant had made out a case of fraud as it had alleged and to the extent that it was error to sustain the plaintiff's motion for a peremptory instruction for judgment in favor of the plaintiff.

Appellant claims the answer of the applicant to question 10 was equally false and fraudulent. The question was, "Are you now in good health, free from disease and injury?" And the answer was "Yes." This and the other answers were made in July, 1934. Applicant was examined by the defendant's physician the same month and recommended as a good risk. Doctor Hartman testified that he examined the applicant in August, 1934, and found a cancerous growth. After the applicant returned from the Mayo Hospital, where an operation had been performed, this witness, in the month of November, 1934, discovered symptoms of gallstones, and after the death of the applicant in December, 1934, in a post-mortem examination both matters were verified. Doctor Hartman gave it as his professional opinion that a gallstone had been forming several years and the cancer from six to nine months, and further that it was entirely possible that the applicant, although a physician himself, might not have known or thought he had either of these diseases.

Many of the authorities cited by plaintiff as to good faith in making such answers are more nearly applicable to the attitude

of the applicant in his answer to this question than in his answer to question 6A. The testimony of Doctor Hartman sounds reasonable and is the only testimony on the subject of the applicant knowing of his having serious diseases. This answer calls for an opinion rather than a positive statement of fact. How different the situation would have been if he had made the same answer after having broken a leg a few years before. Other physicians might have different opinions as to Doctor Scott knowing of either of these troubles earlier. It was only about a month after he answered these questions that he had Doctor Hartman examine him. However, he kept on at his work, we are told. We do not feel that the defendant established fraud in connection with the answer to this question.

We do not find assignments of error concerning the introduction of evidence to be serious enough to justify further consideration in this connection. We do not find error in overruling defendant's motion for a directed verdict.

Since we have found that the defendant established sufficient fraud in connection with the answer of applicant to question 6A to submit the case to the jury, and the judgment for plaintiff should not have been directed, there was error in overruling the defendant's motion for a new trial.

The judgment is therefore reversed, and the case sent back with instructions to set aside the judgment and grant a new trial.

DAWSON, J., concurs in the judgment of reversal, but holds that judgment for defendant should be directed.

HARVEY, J. (dissenting): In my judgment there is no occasion to direct a new trial in this case. Either the judgment of the trial court should be affirmed, or it should be set aside with directions to enter judgment for defendant. The pleadings disclose there was no controversy over the fact that the policy had been issued, that premiums had been paid, that the insured had died, and that plaintiff was the beneficiary named in the policy. The only controverted issue raised was whether defendant should be relieved from payment of more than the premiums received, which it tendered back, because two answers made by the insured in his application for the policy had been falsely and fraudulently made. Defendant alleged that defense in its answer, but more particularly in its cross petition to set aside the policy. This raised the same issue that would have

been raised by an independent action on behalf of defendant to set aside the policy because of such false and fraudulent answers. This is an issue for a court of equity, and although a jury was impaneled in this case there was in fact no jury issue to be tried, except as the court might use the jury in an advisory capacity. At the beginning of the trial the attorneys for the respective parties agreed that upon the issues joined the burden of proof was on the defendant. It assumed that burden of proof and had the opening in the introduction of evidence and the argument. At the close of all the evidence the plaintiff filed a motion for a directed verdict in her favor, and the defendant filed a motion for a directed verdict in its favor. By doing so the parties submitted a court case to the court. The court directed a verdict for plaintiff, thereby deciding the issues joined in favor of the plaintiff upon the evidence adduced. This was necessarily a finding and a holding that the defendant had not established the facts alleged by it, namely, that the answers to the questions made by the insured in the application for the policy were falsely and fraudulently made. It seems to me the only question before this court is whether the finding and judgment of the trial court can be sustained under the evidence. Now, it in effect is conceded in this court that the answer to question 6A was inaccurate, and in a technical sense, at least, that it was known by the insured to be inaccurate at the time it was made. Subsequent information, acquired more definitely after the death of the insured, disclosed that the answer to question 10 was inaccurate when made, although it is not clearly established that the insured knew that fact. But inaccuracy alone would not justify the cancellation of the policy. These answers were not warranted to be true; defendant, in its form of application, did not require the truth of the answers to be warranted; hence, we get to the single question of whether the answers were fraudulently made. As to the answer to question 10, it is not seriously contended the answer was fraudulent; to the extent this contention is made it had no substantial support in the evidence. This leaves the only substantial controversy in the case to be whether the answer to question 6A was fraudulently made. The principal part of the evidence pertains to that question. The determination of the question involved the consideration of the evidence, and the various parts of it, from several different angles or viewpoints, as the opinion points out. It required the trial court to pass upon the credibility of witnesses and to weigh the testimony of

the respective witnesses in the light of all the facts and circumstances shown by the evidence. The trial court was required also to apply the well-established rule, referred to in the opinion, that fraud is never presumed, but must be established by clear and convincing proof. The trial court thought, and by its ruling determined, that the fraud relied upon by defendant had not been so established by such proof. Unless we can say, as a matter of law, that the trial court was wrong in that conclusion its judgment should be affirmed. I am not able to find evidence in this record which compels a finding to the contrary. This court, to reach the conclusion that the evidence compels a finding of fraud, and a judgment in accordance with such finding, would have to place itself in the position of the trial court for the purpose of weighing the evidence, passing on the credibility of witnesses, and drawing reasonable inferences from all the facts and circumstances of the case. To do these things is not the function of this court in appealed cases. The result is, the judgment of the trial court should be affirmed.