No. 65,486

DAVID J. WAXSE, SPECIAL ADMINISTRATOR OF THE ESTATE OF MAURICE J. BEHNKE, DECEASED, *Appellant*, v. RESERVE LIFE INSURANCE COMPANY, *Appellee.*

(809 P.2d 533)

Opinion filed April 12, 1991.

*David J. Waxse,* of Shook, Hardy & Bacon, of Overland Park, argued the cause and *Wanda M. Temm,* of the same firm, was with him on the brief for appellant.

*Dana M. Harris,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *D'Ambra M. Howard,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is an action on a medical insurance contract. The estate of Maurice Behnke, deceased, asserts Reserve Life Insurance Company (Reserve Life) breached its contract to provide major medical insurance when it refused to pay benefits under the contract for medical expenses incurred by Behnke. In defense, Reserve Life argues it properly rescinded the coverage and contract due to material misrepresentations by Behnke on the application for insurance concerning his health history. Both parties filed motions for summary judgment. The district court determined Behnke made a fraudulent misrepresentation on the application for insurance and granted Reserve Life's motion for summary judgment. We reverse.

We review the facts in the light most favorable to Behnke. *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990). On June 12, 1987, Behnke underwent a blood test at Life Lab, a private laboratory facility. Prior to taking the test, Behnke believed he might test positive for the Human Immunodeficiency Virus (HIV) because of his prior hepatitis and multiple sexual partners. In July 1987, Life Lab informed Behnke that he had tested positive for the presence of HIV antibodies. The letter from Life Lab also recommended a complete medical evaluation by Behnke's personal physician. A physician did not administer the blood test at Life Lab nor inform Behnke of the test results or its meaning. However, Behnke was informed by Life Lab that testing positive for HIV antibodies did not mean that he currently had Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC).

HIV is a virus which is spread by unsafe sexual contact, by needle sharing, or through blood or its components. The HIV virus may cause AIDS, a disease of the human immune system that leaves the body vulnerable to diseases which it can normally

repel. AIDS is a disease of the immune system; it is not a blood disorder. A diagnosis of AIDS depends on the presence of opportunistic diseases which invade on the loss of immunity. The presence of these diseases plus a positive test for HIV antibodies makes possible a diagnosis of AIDS. A positive HIV test indicates that an individual may have been infected with the virus, but does not mean the individual is certain to develop AIDS.

On September 11, 1987, Behnke completed an application for major medical and life insurance with AmWay Group Major Medical & Life Insurance—Reserve Life Insurance Company. He understood that any coverage extended was based upon truthfulness of the application information and that any information discovered untruthful was grounds for rescission.

No question on the application specifically asked whether the applicant had undergone HIV antibody testing for AIDS or any other questions concerning AIDS.

Question 5(c) of the application asked whether the applicant had been treated for or had any indication of specific disorders, including any blood disorders. Behnke answered negatively.

Question 7 asked, "Do you know of any other impairment now existing in the health or physical condition of any proposed insured?" Behnke responded. "No," on the theory his health was not impaired even though he had received a positive HIV test. At the time of filing the application, Behnke felt well.

Question 8 asked, "Has any proposed insured been examined or treated by a doctor during the past three years for anything other than the conditions listed above?" Behnke responded "Yes" and explained in Paragraph 9 he had suffered minor sore throats, colds, etc.

Behnke did not indicate he had tested HIV positive because he found none of the questions were applicable. However, Behnke realized Question 8 was propounded to determine if the applicant had any pre-existing condition. Behnke also determined that Question 8 did not require revelation of the HIV test because it inquired about examinations conducted by doctors and the blood test he had undergone was not administered by a doctor.

At the time Behnke submitted the application to Reserve Life, he had health insurance coverage with Blue Cross-Blue Shield through his former employer, Mid America Directs. Behnke

sought the Reserve Life Insurance contract for several reasons. First, as an independent contractor rather than an employee of Mid America Directs, he was required to reimburse the company on a monthly basis. Secondly, Behnke believed the Blue Cross-Blue Shield premiums were soon going to increase. Finally, Behnke believed Mid America Directs might change insurance carriers. Under Reserve Life's insurance policy, Behnke's premium decreased from $72 a month to $47 a month.

At the time of his application with Reserve Life, Behnke had no signs of any illness and was not convinced in his own mind that he was HIV positive. Behnke was skeptical of the HIV test result because he had undergone a pre-employment physical exam for Eastern Airlines in 1987 and was offered a job, thereby indicating to him his health condition was satisfactory.

Behnke received a validation of coverage under the Reserve Life policy with an effective date of October 1, 1987. Early in 1988 Behnke developed arthritis but waited until April of that year to inform his physicians about the prior HIV-positive test. In July 1988, Behnke was hospitalized at Research Medical Center and diagnosed with having AIDS. Behnke's medical records at Research Medical Center indicated he had tested positive for HIV antibodies nearly a year earlier.

Upon receipt of the Research Medical Center records, a claims examiner for AmWay Distributors of Reserve Life requested information from Behnke concerning the date and place of testing referred to in the records. In response, Behnke informed the claims examiner about his pre-employment physical examination for Eastern Airlines, but he did not provide any information pertaining to the June 1987 blood test at Life Lab.

Based upon the information provided in the Research Medical Center records concerning the pre-application positive HIV test, Reserve Life rescinded its contract of insurance with Behnke and refunded previously paid premiums.

The district court determined that as a matter of law Reserve Life was entitled to summary judgment based upon fraudulent misrepresentation by Behnke in the insurance application.

As a result of Behnke's death during the pendency of the appeal, the administrator of his estate was substituted as a party.

On appeal, the estate contends summary judgment was erroneous because Reserve Life failed to establish an essential element of fraud. Specifically, the estate asserts Reserve Life has not shown that Behnke made a false answer on the insurance application with an intent to deceive.

The issue we address is whether the evidence supports the district court's determination that there was a material and fraudulent misrepresentation by Behnke sufficient to support Reserve Life's rescission of the contract.

The existence of fraud is normally a question of fact. Therefore, upon appeal, our standard of review is limited to determining whether the district court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. *Iola State Bank v. Bolan,* 235 Kan. 175, 187, 679 P.2d 720 (1984); *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545 (1980).

The elements necessary to establish actionable fraud are well established. Fraudulent misrepresentation in an action to rescind an insurance contract includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his injury and detriment. *American States Ins. Co. v. Ehrlich,* 237 Kan. 449, 452, 701 P.2d 676 (1985); *Nordstrom v. Miller,* 227 Kan. at 65. Fraud is never presumed and must be shown by clear and convincing evidence. *Gonzalez v. Allstate Ins. Co.,* 217 Kan. 262, 266, 535 P.2d 919 (1975). In addition, the falsity of a material application statement does not bar recovery under the policy unless the false statement actually contributes to the contingency or event on which the policy becomes due and payable. K.S.A. 40-2205(C).

The estate first argues Behnke did not make an untrue statement on the application. It urges that Question 8 of the application inquires about any prior examination or treatment *by a doctor* and is not concerned with any other type of medically related examinations or treatments. Thus, the estate contends, since a doctor was not present during the Life Lab blood testing, Behnke did not make a false statement in answering the question negatively.

For support, Behnke relies upon *Galloway v. Insurance Co.*, 112 Kan. 720, 212 Pac. 887 (1923). In *Galloway,* an application for life insurance asked for the dates and complaints of the applicant which were attended to by a physician. The plaintiff failed to list an osteopath who had diagnosed plaintiff with a retroflexed uterus, the ultimate cause of plaintiff's death. This court determined the insurer was not entitled to rescind the contract for fraudulent misrepresentation because the question literally asked for only the dates and complaints, and the plaintiff's understanding of "physician" as a general practitioner, although erroneous, was not inconsistent with good faith. 112 Kan. at 723-24. See also *Day v. National Reserve Life Ins. Co.*, 144 Kan. 619, 624-25, 62 P.2d 925 (1936) (negative response to inquiry concerning intestinal disease was not false because plaintiff believed symptoms were chronic constipation); *Jackson v. National Life and Acc. Ins. Co.*, 150 Kan. 86, 90, 90 P.2d 1097 (1939) (plaintiff's failure to list treatment by chiropractor in response to inquiry concerning treatments by a physician held not fraudulent).

We find the estate's argument valid. Behnke answered the questionnaire honestly. No inquiry was made as to AIDS or HIV. Admittedly, Behnke could have gone farther in his disclosure, but to do so he would have had to act as a volunteer about a matter which he did not consider an impairment of his health. It was the insurance company's responsibility to ask the questions to which it wanted answers. This it did not do.

The next issue we address is whether there was substantial competent evidence to support a finding that Behnke intended to deceive or recklessly disregarded the truth in omitting information of the HIV-positive test from the insurance application. The estate argues the district court failed to apply the requisite subjective standard to determine whether fraudulent intent was established. It also contends the district court finding of fraud was erroneous because, although the application may have contained a false answer, it was unintentionally false and, therefore, did not constitute fraud.

A representation made innocently and in good faith does not constitute fraud. *Nordstrom v. Miller,* 227 Kan. at 64-65; *Scott v. National Reserve Life Ins. Co.*, 143 Kan. 678, 679, 56 P.2d 76 (1936). Thus, an answer which denied the existence of any

stomach disease on a life insurance application was not considered fraudulent even though the applicant had consulted physicians concerning a digestive disturbance because the applicant had enjoyed good health and had answered the questions in good faith. *Sharrer v. Insurance Co.*, 102 Kan. 650, 651-52, 171 Pac. 622 (1918). In *Scott v. National Reserve Life Ins. Co.*, 143 Kan. 678, however, an applicant falsely denied on the insurance application that he previously had been turned down by life insurance companies. The *Scott* court determined the plaintiff's false answer was material and his concealment of a material fact indicated a lack of good faith. Thus, the court upheld the insurer's rescission of the contract. 143 Kan. at 683.

In the case at hand, we believe Behnke omitted the information of a positive HIV test in good faith. It was not inquired about, and we find no evidence of fraud.

The judgment of the trial court is reversed. Summary judgment is granted to the appellant.

ABBOTT, J., not participating.