(195 P.3d 776)
No. 99,291

KAREN CHISM, *Appellant*, v. PROTECTIVE LIFE INSURANCE CO. and QUALITY MOTORS OF INDEPENDENCE, INC., *Appellees*.

Opinion filed October 24, 2008.

*W.J. Fitzpatrick*, of Independence, for appellant.

*Rhonda K. Mason* and *W. James Foland*, of Foland, Wickens, Eisfelder, Roper & Hofer, P.C., of Kansas City, Missouri, for appellee Quality Motors of Independence, Inc.

*James P. Rankin* and *Stephen M. Kerwick*, of Foulston Siefkin LLP, of Topeka, for appellee Protective Life Insurance Company.

Before MCANANY, P.J., BUSER and LEBEN, JJ.

MCANANY, J.: In June 2005 Steve and Karen Chism purchased a new vehicle from Quality Motors of Independence, Inc. As a part of the transaction, the dealership's business manager, Dennis Urban, offered to sell them a Protective Life Insurance, Co., credit life insurance policy that would pay off their car loan if either of them died. In her appellate brief, Karen characterizes Quality Motors as an authorized agent for Protective.

Steve had been diagnosed with high blood pressure in 1991, Type II diabetes in 1999, and peripheral vascular disease in November 2004. Steve took various medications and was treated regularly for these conditions.

The Chisms agreed to apply for coverage. Urban electronically downloaded from his computer onto the insurance application form some basic information about the Chisms, such as their names, address, telephone number, age, gender, and social security numbers. He also filled in the blanks with the details about the loan for the new vehicle and the amount of life insurance applied for, including the designated beneficiaries. He then handed the application to the Chisms to complete, review, and sign.

Immediately below the portion of the application filled in by Urban are the words in bold print: "**WARNING -YOU MUST BE ELIGIBLE TO APPLY FOR INSURANCE**." The Chisms were then instructed:

"CIRCLE (item) and INITIAL (line) if any item applies to you. OTHERWISE, DO NO MAKE ANY MARKS.

"1.    I am not eligible for **any** insurance if I now have, or during the past 2 years have been seen, diagnosed or treated for:

(a) A condition, disease or disorder of the brain, heart, lung(s), liver, kidney(s), nervous system or circulatory system; or

(b) Tumor; Cancer; Uncontrolled High Blood Pressure; Diabetes; Alcoholism; Drug Abuse; Emotional or Mental Disorder; Acquired Immune Deficiency Syndrome (AIDS); the Aids Related Complex (ARC); or received test results showing evidence of antibodies of the AIDS virus (HIV Positive).

_____    _____
Debtor Initials       Co-Debtor Initials
(initial here only if you have circled any item)

"2.   I am not eligible for **disability** insurance if I now have, or during the past 2 years have been seen, diagnosed or treated for a condition, disease or disorder of the neck, back, knee(s) or any joint(s) or for carpal tunnel syndrome.

_____    _____
Debtor Initials       Co-Debtor Initials
(initial here only if you have circled any item)

"The sales representative is **not authorized** to waive or change any of the insurability requirements or any provision of the Certificate.
"**By signing below, I state that I have read and understand this Application and represent that I am eligible and insurable for the coverage as requested in the Schedule. I have read and understand the above Application and understand that I am not insurable for; any coverage if I have circled (any item) and initialed application statement #1 or; disability coverage if I have circled (any item) and initialed application statement #2. I understand this insurance is not required to obtain credit. I understand and agreed that I am insured only if I have signed below and agree to pay the additional cost of the insurance. I have detached and retained the 'INSURED'S COPY' of this form and Certificate for my records.**"

The instructions to circle and initial applicable health conditions were printed in red, as was the instruction to provide initials at the end of statements 1 and 2 if any item has been circled. The Chisms did not circle or initial any health condition. The form was then signed and dated by Karen as insured and by Steve as co-insured. Urban signed as licensed resident agent for Protective.

The Chisms signed the application without reading it.

About 7 months later, in January 2006, Steve died from sudden cardiac arrest. The death certificate listed diabetes mellitus, hypertension, morbid obesity, and peripheral vascular disease as significant conditions that contributed to, but were not the underlying cause of, Steve's death.

Karen submitted a claim for benefits under the policy. Based on Steve's prior medical conditions, Protective denied the claim and

rescinded the policy. In September 2006, Karen initiated this action in the district court against Protective for breach of contract and against Quality Motors for negligent procurement of the policy.

During discovery, the district court quashed Karen's subpoenas for depositions of employees of Quality Toyota, a companion auto dealership that also sold credit life insurance through Protective, and refused to compel production of credit life applications of other customers of Quality Motors.

The parties filed competing motions for summary judgment. After sustaining Protective's motion to strike the affidavit of witness Nancy Myers attached to Karen's summary judgment motion, the district court sustained the defendants' motions and overruled Karen's motion.

Karen appeals these rulings. We will first address the summary judgment in favor of Protective on the issue of rescission. Then we will consider the summary judgment in favor of Quality Motors on Karen's negligent procurement claim. Finally, we will address the discovery issues and the striking of the Myers affidavit.

*Summary Judgment*

The applicable standards for summary judgment are well known to the parties and can be found in *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007). Our review is de novo. *Botkin v. Security State Bank*, 281 Kan. 243, 248, 130 P.3d 92 (2006).

*Rescission of the Policy*

*1. Materiality*

With respect to a life insurance policy, the insurer generally has the right to rescind the policy ab initio for fraud or misrepresentation. See *Slaby v. Cox*, 250 Kan. 429, Syl. ¶ 1, 827 P.2d 18 (1992). Such misrepresentations include an untrue statement of fact, known to be untrue by the putative insured, made with the intent to deceive or recklessly made with disregard for the truth, upon which the insurer justifiably relies and acts to its detriment. See *American States Ins. Co. v. Ehrlich*, 237 Kan. 449, 452, 701 P.2d

676 (1985). To justify rescission, the insurer must establish that the false statement actually contributed to the event triggering the obligation to pay benefits under the policy. See K.S.A. 40-2205(C); *Waxse v. Reserve Life Ins. Co.*, 248 Kan. 582, 586, 809 P.2d 533 (1991). Finally, fraud is never presumed but must be shown by clear and convincing evidence. *Gonzalez v. Allstate Ins. Co.*, 217 Kan. 262, 266, 535 P.2d 919 (1975).

K.S.A. 40-2205(C) provides:

"The falsity of any material statement in the application for any policy covered by this act may not bar the right to recovery thereunder unless the false statement has actually contributed to the contingency or event on which the policy is to become due and payable: Provided, however, That any recovery resulting from the operation of this section shall not bar the right to render the policy void in accordance with its provisions."

K.S.A. 40-418 similarly provides:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable."

Under these statutes, the test is whether Steve's ongoing health conditions contributed to his death for which payment under the policy is sought. There was no autopsy performed to determine the exact cause of Steve's death. However, Steve's death certificate listed diabetes mellitus, hypertension, morbid obesity, and peripheral vascular disease as significant conditions contributing to his death.

Karen's expert, Dr. James Hignight, opined that none of the conditions contained on the application were the immediate or underlying cause of Steve's death from sudden cardiac arrest. However, in his view uncontrolled diabetes mellitus and uncontrolled hypertension are "associated" with sudden death. Thus, he did not negate the notion that Steve's medical conditions contributed to his death.

The defendants' expert, Dr. Eric Voth, opined that Steve's cardiac arrest "was directly caused by, or significantly contributed to,

his underlying conditions of diabetes, hypertension, and vascular disease."

Based on the plain language of these statutes, the medical testimony, and Steve's death certificate, it is clear that Steve's ongoing health conditions, which were not disclosed in the policy application, contributed to his death.

The test of the materiality of a false statement in an application for life insurance is whether the misrepresentation could reasonably be considered to affect the insurer's decisions regarding the degree or character of the risk it is being asked to underwrite, whether to issue the policy, or what premium it should charge for the policy. See *Schneider v. Washington National Ins. Co.*, 200 Kan. 380, 397, 437 P.2d 798 (1968). The same test applies in considering a false statement in an application for life insurance.

The policy application here specifically negated Steve's eligibility for coverage due to his medical conditions. Further, the policy application made it clear that Urban had no authority to waive Protective's insurability requirements. Under the circumstances, the medical conditions the Chisms failed to disclose in the application were clearly material to the risk Protective was being asked to underwrite.

### 2. *Waiver*

Next, we consider the argument that Protective waived its right to rescind the insurance policy because Urban knew the Chisms did not read the application and because Urban filled out the application on their behalf.

The record does not establish that Urban knew the Chisms did not read the application. Urban testified that the Chisms did not immediately sign the document when he handed it to them. Karen had it before her for an adequate time for her to read it before signing it. Urban stated, "She did not do anything to my indication that she did not read it."

Besides, Karen is bound by the provisions in the application regardless of her failure to read or understand its terms, unless her execution of it was the product of fraud, undue influence, or mu-

tual mistake. See *Albers v. Nelson*, 248 Kan. 575, 579, 809 P.2d 1194 (1991).

With respect to the claim that Urban filled out the application, Karen relies on *Cooley v. National Life & Acc. Ins. Co.*, 172 Kan. 10, 238 P.2d 526 (1951), for the proposition that Protective could not rely on the answers provided by Urban. In *Cooley*, an insurance agent, who knew the applicant had diabetes, answered a relevant health inquiry by writing "No." 172 Kan. at 11. Our Supreme Court concluded the insurance company improperly denied coverage because the company could not take advantage of a false answer entered by its agent without knowledge of or input from the insured. 172 Kan. at 15-16.

Karen also relies on *Schneider* which involved facts similar to those in *Cooley*. There, the court determined that the insurer could not rescind the policy based on false answers provided by its agent which were contrary to the facts stated by the insured.

Neither *Cooley* nor *Schneider* presents facts comparable to those now before us. The background facts provided by Urban on the application did not relate to information about material health conditions which the Chisms were expected to supply. We are not confronted with a situation where the insured gives the procuring agent a verbal answer to a health question on the application and the agent writes down something entirely different on the application. Indeed, Karen claims that Urban failed to question them at all about their health conditions.

Citing *Swain v. Life Ins. Co. of Louisiana*, 537 So. 2d 1297 (La. App. 1989), Karen claims that Urban had a duty to investigate Steve's health problems. In *Swain*, the applicant was on crutches when the application form was completed. The agent noted in the application that the applicant was in "sound health." 537 So. 2d at 1298-99. Karen argues that since Steve's obesity was obvious to Urban, and it is common knowledge that obesity leads to diabetes and hypertension, Urban should have inquired further.

Unlike the agent in *Swain*, Urban did not fill out the policy application in its entirety and merely ask the applicants to sign it. Here, the Chisms had the opportunity and duty to correctly com-

plete the portion of the application form relating to health issues. This they failed to do.

### 3. *Fraudulent Misrepresentation*

Karen contends that failure to disclose Steve's medical condition does not constitute a misrepresentation. To the contrary, Kansas courts have long recognized that fraud may consist of the omission of a material fact. See *Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 260, 978 P.2d 922 (1999); *Umbehr v. Board of Wabaunsee County Comm'rs*, 252 Kan. 30, Syl. ¶ 4, 843 P.2d 176 (1992).

Further, *Waxse,* mentioned earlier and cited by Karen, does not support her position on this issue. In *Waxse,* the policy application did not inquire about AIDS or HIV, and the insured failed to disclose that he was HIV positive. Our Supreme Court found that under the circumstances, the insured honestly answered the questions put to him by the insurer. 248 Kan. at 586-87. Unlike in *Waxse,* the Chisms were asked about specific health conditions material to the risk which Steve suffered from, and the Chisms failed to affirmatively respond.

Karen also claims the failure to disclose Steve's health conditions was not a deliberate deceit or callous disregard for the truth. However, an insurer may rescind a policy after a misrepresentation made with reckless disregard for the truth. See *Waxse,* 248 Kan. at 586. The Chisms knew of Steve's health problems. Kansas law requires applicants to know and to understand the contents of a policy application before signing it and to answer all questions fairly and truthfully. Their failure to read the application does not excuse them absent fraud, undue influence, or mutual mistake. See *Albers,* 248 Kan. at 579; *Ridgway v. Shelter Ins. Co.*, 22 Kan. App. 2d 218, 225, 913 P.2d 1231, *rev. denied* 260 Kan. 995 (1996).

Finally, we address the argument that the acknowledgment that preceded the Chisms' signatures "applies only to answers actually made by the applicants." For support Karen cites the statement in *Schneider* that

" '[a]n applicant has no absolute duty to read a policy in anticipation of fraud or mistake of an agent . . . a warranty that all answers to questions were correct

[is only] a warranty that the answers actually made by the insured were correct, and not that the agent had correctly transcribed them.' " 200 Kan. at 396.

Again, Karen ignores the fact that Urban filled out only the biographical and transactional information that preceded the health questions that the Chisms were expected to answer. This fact distinguishes the present circumstances from those in *Schneider* where the agent filled out the entire application.

The district court did not err in granting Protective summary judgment on its rescission claim.

### Negligent Procurement

The district court did not specifically address the negligent procurement claim in granting defendants' summary judgment motions. Nevertheless, given our de novo standard of review, we are able to consider the issue.

The first cause of action asserted by Karen in her petition is her breach of contract claim against Protective. Her second cause of action is against Quality Motors for negligence. In it she asserts:

"15. . . . Quality Motors acted as the agent for [Protective] in presenting and completing the application for credit life insurance and in doing so, negligently failed to present and recite to plaintiff and her husband Steve Chism the medical inquiries set forth in the application.

"16. In the event it should be determined that [Protective] is not liable to plaintiff on the *First Cause* alleged above, plaintiff is entitled to judgment against [Quality Motors] for negligence in failing to properly present and record the medical inquiries on the application for credit life insurance."

We find no filed pretrial order in the record, though Karen filed a document to which a faxed copy of a pretrial order drafted by Quality Motors was attached. The district court apparently signed the fax copy. That order repeats the substance of Karen's allegations made in paragraph 16 of count II of her petition. Her negligence claim is based upon Quality Motors "failing to read the medical inquiries on the application to plaintiff and decedent."

In its summary judgment motion Quality Motors identified as an uncontroverted fact only the following which relates to Urban's agency status:

"2.   Dennis Urban, an employee with Quality Motors, presented the Chisms with the option to apply for credit life insurance with the purchase of the 2005 Mariner."

Karen admitted this fact. In Protective's separate summary judgment its only reference to the employment/agency status of Urban is found in paragraph 4 of its statement of uncontroverted facts wherein Urban is referred to as "Quality Motors' business manager." In her response to the motion Karen admitted this fact. In her separate motions for summary judgment against Protective and Quality Motors, Karen does not identify any uncontroverted facts relating to the agency status of Urban. She does not allege that Urban was acting as her agent. In fact, in her appellate brief Karen refers to Quality Motors as the authorized agent for Protective.

In opposing Quality Motors' summary judgment motion, Karen relies on *Marshel Investments, Inc. v. Cohen,* 6 Kan. App. 2d 672, 634 P.2d 133 (1981), and *Waxse,* which we discussed earlier. *Waxse* considered the conduct of the insured in failing to disclose his HIV condition in an insurance application *he* filled out. The case does not discuss the the duty or breach of duty of any agent. *Waxse* does not apply.

*Marshel* was an action against an insurance brokerage firm for failure to procure insurance on plaintiff's equipment at its oil and gas lease site. The equipment was destroyed by fire. The particular agent who dealt with plaintiff was determined to be an independent insurance agent who, under an agreement with the insurer, was required to submit applications for the issuance of policies for *his clients.* His client was the plaintiff, not the insurer.

The typical situation for a claim such as this is found in an old case, *Rezac v. Zima,* 96 Kan. 752, 754, 153 Pac. 500 (1915), in which the court noted:

"A broker or agent who undertakes to procure insurance for another is bound to exercise reasonable diligence to obtain insurance *in accordance with his agreement* and to notify *his principal* if he is unable to do so. According to the averments of the petition the defendants failed to perform this duty, and, as has been alleged, Zima deliberately deceived the plaintiff by giving him assurance that the property had been insured when he knew that no insurance had been procured." (Emphasis added.)

Further, as stated in *Rosedale Securities Co. v. Home Ins. Co.*, 120 Kan. 415, 418, 243 Pac. 1023 (1926), an insurance broker is the agent of his client, the insured, in matters connected with the procurement of insurance. Urban was not an insurance broker; at least, we have nothing in the parties' uncontroverted facts that supports such a notion. We have nothing before us in the competing summary judgment motions that establishes that Urban was acting as an agent for the Chisms as opposed to an employee of Quality Motors.

The familiar elements of duty, breach, causation, and damages must be present in every tort claim, including Karen's negligent procurement claim. Whether a duty exists is a question of law. *Honeycutt v. City of Wichita*, 251 Kan. 451, 463, 836 P.2d 1128 (1992).

We have before us an auto dealership which, during the closing of a sales transaction, offered to the Chisms the opportunity to apply for credit life insurance to cover the purchase price of the vehicle being financed. The offer was made by the dealership's employee. Nowhere does Karen allege that Urban was acting as her agent in the procurement of the credit life policy. To the contrary, she admits that Urban was acting as an employee of Quality Motors. Under these circumstances, and based upon our de novo review of these motions, Quality Motors was entitled to summary judgment on Karen's claim of negligent procurement since there is no evidence that Urban, who was an employee of Quality Motors, owed any legal duty to the Chisms when it came to their obligation to read, understand, and accurately respond to the inquiries made in the credit life policy application about their health.

The district court did not err in granting summary judgment to Quality Motors.

*Discovery*

Karen claims that the district court erred in quashing subpoenas for deposition of certain witnesses, excusing the defendants from producing relevant documents, and striking a witness' affidavit.

The district court has broad discretion regarding the control and conduct of discovery in civil cases. Its orders will not be disturbed

on appeal absent a clear abuse of discretion. See K.S.A. 60-226(c); K.S.A. 60-237(a)(2); *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 513, 86 P.3d 513 (2004). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. *Simon v. Simon*, 260 Kan. 731, Syl. ¶ 2, 924 P.2d 1255 (1996).

*Other Credit Life Applications*

Karen sought to obtain applications for credit life submitted by other customers of Quality Motors. The district court refused to compel production of these applications. However, the court ordered Quality Motors to provided Karen with the name, age, address, and date of the credit life application for all persons who purchased credit life insurance during the time period requested by Karen. The court authorized Karen to contact these individuals in order to show them a specimen policy application and then question them about their experience in purchasing credit life from Quality Motors.

On appeal, Karen's argument is premised on the fact that Urban received a commission for selling a policy to the Chisms and, therefore, had a financial incentive not to alert the Chisms to the medical questions in the application. She claims the applications of other Quality Motors customers would show a pattern of similar improper conduct.

The problem with this is that the application alone would not disclose whether the applicant was encouraged to sign the application without disclosing relevant medical conditions. This could only be accomplished by interviewing the applicants, and Quality Motors was required to provide the information with which Karen could do so. Under the circumstances, the district court did not abuse its discretion in this discovery order.

*Depositions*

Karen sought to depose Judy Hugo and Pat Brzoticky, employees of Quality Toyota, a sister dealership to Quality Motors that also sold credit life insurance through Protective. The district court

quashed the subpoenas. The subpoenas referred to by Karen on appeal were not subpoenas duces tecum. Karen claims the depositions would have permitted her to determine whether credit life applications from Quality Toyota "indicated on their face that the applicants had not answered the medical interrogatories." First, we fail to see how questioning these Quality Toyota employees without the underlying documents would have accomplished this. Second, even if Karen had the credit life applications from customers of Quality Toyota, we fail to see how interrogating these employees would establish that the various applicants had disqualifying medical conditions they failed to disclose. Third, we fail to see how these depositions relating to the conduct of Quality Toyota towards its customers may lead to the discovery of admissible evidence regarding the transaction between the parties now before us. Karen does not present facts which, under our law, would excuse the failure of her and her husband to read the application before signing it. The district court did not abuse its discretion in quashing these subpoenas.

### Summary Judgment Affidavit

Karen attached to her motion for summary judgment the affidavit of Nancy Myers, who stated that she and her husband were issued credit life policies for a vehicle purchased at Quality Motors even though the salesman handling the transaction knew that Nancy had high blood pressure and kidney failure and that her husband suffered from brain injuries. She further states that Urban did not inquire about her health or the health of her husband and did not ask them to read the application. Karen asserts that on Protective's motion the district court struck the Myers affidavit.

We find no record of the court's ruling on this issue. Karen has the duty to designate a record sufficient to establish this claim of error. Without an adequate record, this claim necessarily fails. See *Ellibee v. Aramark Correctional Services, Inc.,* 37 Kan. App. 2d 430, 433, 154 P.3d 39 (2007). In any event, Myers states that the salesman handling her transaction knew of her and her husband's state of health, but she makes no allegation that Urban, who handled her credit life insurance transaction, knew. Thus, even if the

court had considered the Myers affidavit in ruling on the pending summary judgment motions, there is no indication that the ultimate rulings would have been any different. If the district court struck the affidavit, it did not abuse its discretion in doing so.

Affirmed.