No. 29,713.

Leota Blanche Klein, *Appellant,* v. The Farmers and Bankers Life Insurance Company, *Appellee.*

(297 Pac. 730.)

Opinion filed April 11, 1931.

*Raymond F. Rice,* of Lawrence, *John S. Wright* and *Whitson Rogers,* both of Kansas City, Mo., for the appellant.

*W. D. Jochems* and *J. Wirth Sargent,* both of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Leota Blanche Klein to recover upon an alleged insurance contract made between Edgar Klein, in his lifetime, and the Farmers and Bankers Life Insurance Company, which was embodied in a written policy of which there was no manual delivery. At the close of plaintiff's evidence the court sustained a demurrer to her evidence and gave judgment for defendant. Plaintiff appeals.

An application for insurance upon his life in the amount of $10,000 was made by Edgar Klein on January 9, 1925. In his application he stated to a medical examiner that he had not consulted a physician as to his health in the last ten years; that as far as he knew and believed, he was in good health; that no medical examiner had ever expressed any unfavorable opinion as to his health or insurability and that he had never had any disease or injury. In the application which constituted a part of the contract, it contained an agreement signed by Edgar Klein:

"That no liability shall attach to the company until the first premium is paid and the policy is delivered to and received by me during my lifetime, and good health."

There was a further stipulation:

"That only the president, vice president and secretary of the company can make, modify or discharge contracts or waive any of the company's rights or requirements, and that none of these acts can be done by the agent taking this application."

He was passed by the medical examiner of the insurance company as a fit subject for insurance and a policy was written out and transmitted to the superintendent of insurance on January 13, 1925, where it was registered and the policy was sent to J. R. Holmes, the local agent for the insurance company, for delivery conditioned on the good health of Edgar Klein and the payment of the first annual premium. About January 19 Klein remained at his home under the advice of his physician, who told him to go home and go to bed and rest. A few days later he sent one of his employees to the office of the local agent to inquire if the policy had arrived, and was informed by Holmes, the local agent, that he had received a policy, but refused to deliver it because Klein was then a sick man. There was no offer to pay the premium on the policy, nor

was anything said by Holmes at that time respecting the premium. The policy was never delivered, nor was any premium paid, and on August 16, 1925, Klein died of pernicious anemia.

It appears that in December, 1924, he was not feeling well and for a time had not been able to put as much pep into his business as he usually had, and he then interviewed Doctor Sudler, who made an examination of Klein. The doctor asked him if he had had his teeth examined, and finding that he had not referred him to Doctor Haden, a Kansas City physician, as an expert in that line. Klein visited Doctor Haden, who made an examination and reported to Doctor Sudler that Klein was suffering from pernicious anemia. It does not appear that Klein was told that he was in an anemic condition, but Sudler advised him that Doctor Haden had found him to be in a run-down condition and that he would have to be treated, and that they might have to put him to bed. After the application for insurance had been made, Klein remained at home and most of the time had been in bed. When the policy was completed and forwarded to Holmes, the local agent, Klein requested an employee to call on Holmes and ask him if the policy had been received. His reply as already stated was that the policy was there but he could not deliver it for the reason that Mr. Klein was a sick man, but no mention was made of the fact that the premium had not been paid. Doctor Sudler had not told Klein that he had any special disease or that he had pernicious anemia, but he did tell Mrs. Klein the seriousness of his trouble. It was Doctor Sudler's opinion that his physical condition was substantially the same on January 20, 1925, when the delivery of the policy was refused, as it had been throughout the month of January.

The court ruled correctly, we think, in holding that plaintiff was not entitled to a recovery. Apart from the question as to the refusal to deliver the policy when Klein was sick and when there had been no payment of premium as required, there is the effect of misrepresentations in his answers to the questions as to whether he had consulted a physician in the last ten years. It is shown that shortly before the application for insurance, Klein had consulted Doctor Sudler, of Lawrence, and also Doctor Haden, of Kansas City. The latter had made an examination, including a blood test, from which he had learned that Klein had pernicious anemia. Doctor Haden had not told Klein of the character of his disease. He did

know that he had undergone the examinations. The fact of the examinations was a material one, and if it had been answered truthfully it would have enabled the insurance company to have pursued the inquiry as to what the blood test disclosed, and if it had learned that the applicant was afflicted with a serious disease it naturally would have refused to insure him. In the application the applicant had agreed in specific terms that the application should constitute a part of the contract, and that the answers therein were full, complete and true and these with the conditions and benefits written therein should be the sole basis of the contracts binding alike on all persons interested under the policy to be issued. Some of the answers were not matters of the belief or opinion of the applicant, but were matters of fact which he well knew and which he answered falsely. The subject of the questions must be conceded to be material. It was incumbent upon the applicant to answer them fairly and truthfully. There should have been absolute good faith in the answers given, and misrepresentations, evasion or conscious concealment necessarily operate to defeat the contract of insurance. (*Hoover v. Royal Neighbors,* 65 Kan. 616, 70 Pac. 595; *Hiatt v. Woodmen of the World,* 107 Kan. 359, 191 Pac. 472; *Steele v. Woodmen of the World,* 115 Kan. 159, 222 Pac. 76; *Lodge v. Order of United Commercial Travelers,* 125 Kan. 26, 262 Pac. 598.)

The contention of the plaintiff is that there was a constructive delivery of the policy of insurance, that the two conditions precedent to the delivery of the policy—one that he should be in good health, and the other that the first premium should be paid—were obviated by the fact that he was in as good health at the time the demand for the delivery of the policy was made as he was at the time of the application, when the insurance examiner accepted him as being an insurable applicant, and that the payment of the premium had been waived. While the application was received and a policy written and prepared for delivery which was sent to the local agent at Lawrence, not to be delivered unless the first premium was paid and the applicant was in good health, he had specifically agreed to these conditions in the application made. It is contended that the nonpayment of the premium was waived and the company estopped to defend on that ground because when the delivery of the policy was demanded, Holmes, the local agent, did not mention the premium but only asserted as a reason for refusal of delivery that the ap-

plicant was then a sick man. As to any waiver or estoppel by the action of the local agent, the applicant had stipulated that he had no right or power to waive any of the company's rights or requirements and that only the president, vice president and secretary could modify contracts or waive requirements. By reason of these stipulations the plaintiff is not in a position to insist that a specific requirement of the company had been waived by anything said or done by Holmes. In *Musgrave v. Equitable Life Assurance Society,* 124 Kan. 804, 262 Pac. 571, it was said:

"Where an application for a life insurance policy provides that it shall not take effect until the first premium has been paid during the good health of the insured and that no agent shall have any right to waive any requirements, and the agent attempts against definite instructions to put it into effect by delivering it to the wife of the applicant, knowing that the applicant is sick and in the hospital at the time, the insurance company will not be deemed to have waived its right to the defense of lack of good health at the time of such delivery." (Syl. ¶ 1.)

This authority is as effective against the requirement that a premium shall be paid as it is that he shall be in good health at the time of delivery. As we have seen, however, the applicant was not then in good health, in fact, he was sick and confined to his bed much of the time with a fatal disease. An ingenious argument is presented that he was in as good health at the time of the demand as he was when the application was accepted, and that the applicant should be regarded as still in good health unless there has been a change in the condition of his health between the date of his medical examination and the delivery of the policy. It is true the evidence was that there was no noticeable difference in the applicant's health between the making of the application and the refusal to deliver the policy. Reference is made to a statement in *Priest v. Insurance Co.,* 116 Kan. 421, 227 Pac. 538, in which it was said:

"The effect of a clause that a life insurance policy shall not take effect unless the applicant is in good health at the time of its delivery is to protect the company against a new element of risk through a change in the applicant's condition arising after the company's investigation had been made." (Syl. ¶ 5.)

In that case the policy had been delivered and the premium paid and it was held that:

"Where false answers concerning his health were knowingly made by an applicant for life insurance, the fact that the agent through whom the application was made, but who was not authorized to decide whether the policy

should be issued, knew of their falsity does not prevent the company from successfully resisting payment on the ground of such fraud." (Syl. ¶ 4.)

While it is said that the term is one for the protection of the company against a new element of risk, it is not necessarily the only one. It is competent for parties to stipulate that the contract shall not be deemed to be complete until the delivery of the policy, and further that it should not be delivered unless the applicant is at the time in good health. What is good health as used in the insurance contract like the one in question? It is not apparent good health, nor yet a belief of the applicant that he is in good health, but it is that he is in actual good health. Of course, slight troubles or temporary indisposition which will not usually result in serious consequences, and which do not seriously impair or weaken his constitution, do not establish the absence of good health, but if the illness is of a serious nature, such as to weaken and impair the constitution and shorten life, the applicant cannot be held to be in good health. (*Miller v. Knights and Ladies of Security,* 103 Kan. 579, 175 Pac. 397; *Pickens v. Security Benefit Association,* 117 Kan. 475, 231 Pac. 1016.) In a note in 40 A. L. R. 663, it is said:

"The general rule appears to be that the term good health when used in a policy of life insurance means that the applicant has no grave, important or serious disease and is free from any ailment that seriously affects the general soundness or healthfulness of the system. A mere temporary indisposition which does not tend to weaken or undermine the constitution at the date of the policy does not render the policy void, and it seems that an apparent condition of good health or anyone's belief that the insured is in good health, is not sufficient."

This is the governing rule in our state, and a multitude of authorities are cited in its support.

Some objections are made to rulings on the admission of testimony, which we find upon examination not to be material.

Under the record presented it must be held that the court correctly ruled that the plaintiff had failed to establish a right of recovery, and hence the judgment is affirmed.

HUTCHISON, J., not sitting.

SLOAN, J., not participating.