No. 33,425

SAVANNAH BROWN, *Appellee,* v. METROPOLITAN LIFE INSURANCE COMPANY, *Appellant.*

(69 P. 2d 1110)

Opinion filed July 10, 1937.

*Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott* and *George Stallwitz,* all of Wichita, for the appellant; *Harry Cole Bates,* of New York, N. Y., of counsel.

*Joe T. Rogers* and *James A. Conly,* both of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover on a policy of life insurance. From an adverse judgment the defendant company appeals, assigning eight claims of error, only one of which will be noticed, *i. e.,* that the trial court erred in denying defendant's motion for a directed verdict. For brevity plaintiff will hereafter be re-

ferred to as plaintiff, the insured, Frank Brown, as Brown, and the defendant as the company.

Briefly stated, the defense was that Brown had made false and fraudulent answers to questions in the application for the policy; that he had permitted the policy to be lapsed for nonpayment of premiums; that in a written application for reinstatement of the policy Brown willfully and knowingly misrepresented the condition of his health and concealed illnesses suffered by him prior thereto and at that time, and failed to disclose the names of physicians whom he had consulted; that such representations were material to the risk, and had the application for reinstatement contained truthful answers the policy would not have been reinstated. Tender was made of the premiums paid by Brown. By cross petition the company alleged facts concerning the execution and delivery of the policy; that it lapsed for nonpayment of quarterly premium, and that it was reinstated. Without detailing the allegations, in substance it was alleged that Brown procured the policy to be issued and delivered to him, and after lapse, to be reinstated, by making false and fraudulent written answers to questions propounded as to his health and as to whether he had consulted a physician. Attached to the pleading was a copy of the application for reinstatement which will be referred to in more detail later. It was alleged that Brown's answers to questions therein as to his sound health and as to whether he had consulted a physician were false, the falsity being unknown to the company, and were made to deceive the company, which relied thereon and reinstated the policy; that all of the false and fraudulent statements were material to the risk and that Brown was then suffering from the disease that later resulted in his death, viz., tuberculosis. Other allegations on this phase need not be noted. It was also alleged that after the death of Brown the company learned of the fraud and tendered to plaintiff the amount of all premiums received by it, the tender being refused. Tender into court was made. The prayer was for cancellation of the policy. Plaintiff's reply to the answer was a general denial, and her answer to the cross petition was a general denial and an allegation that if the policy was not valid she was entitled to collect premiums paid amounting to $90.16. When the case came on for trial the company paid into court for the benefit of plaintiff the sum of $94.66, being the premiums paid and interest thereon.

Plaintiff's case in chief was brief. She identified the policy of

insurance which was admitted in evidence, and testified to the death of her husband, the insured.

The company offered evidence tending to prove that Brown's answers to the application for insurance were false, and that the answers made by him in a statement to procure delivery of the policy were false. We deem it unnecessary to detail this evidence or to discuss it. We shall confine our statement to the following, all of which is in writing and undisputed: Application for the policy was made March 17, 1935, and the policy was later issued under date of April 8, 1935; the policy lapsed for nonpayment of the quarterly payment due July 8, 1935, and on September 16, 1935, Brown made a written application for reinstatement of the policy in which he agreed that if the company granted reinstatement the same should be deemed to be based exclusively upon the representations contained in the application, and upon the express condition that if the statements be in any respect untrue the company, for a period of two years from reinstatement, should be under no liability except to return all premiums paid since date of reinstatement. Questions 4 and 6 of the application for reinstatement, with the answers made by insured, were as follows:

"4. Are you now in sound health? Yes.
"6. Have you since date of issue of the above policy—
    (a) Had any illness or injury? If yes, give date and particulars. No.
    (b) Consulted any physician or physicians? If yes, give date, and name and address of physician or physicians, and state for what illness or ailment. No."

It was also shown that Brown had a health and accident policy in the National Life & Accident Insurance Company of Nashville, Tenn., and under date of June 19, 1935, he made a claim for compensation, in which his physician answered questions as follows:

"5. What disease has patient now? Bilious, anemic, pulmonary *conjection* [congestion] with bleeding.
"9. Is patient now necessarily confined to bed by sickness? Yes."

On this claim he was paid and receipted for the sum of $5 on June 26, 1935. He made a similar claim against the same company under date of June 26, 1935. In that claim his physician answered question 5, above, thus: "Pulmonary congestion, bilious and anemia," and question 9 as above. On this claim he was paid and receipted for $5 on July 3, 1935. Another claim against this same company was rejected. Its contents are not shown and it will not be referred to further. Brown also had an accident and health policy in the

Washington National Insurance Company of Chicago, and under date of June 19, 1935, he made claim thereunder in an application which he personally signed and in which he answered questions to the effect he was not able to leave the house and that he was confined continuously to his bed. Accompanying this application was his physician's certificate containing these questions and answers:

"3. What is your exact diagnosis? Bilious, pulmonary congestion with bleeding.

"7. Is the disease chronic? No. Venereal? No. Tubercular? Maybe. Give temperature. 100. Pulse. 90."

On this claim Brown was paid $24. Each of the above medical certificates was made by the same physician.

Brown also made a claim under a health policy in the Missouri Insurance Company of St. Louis, in which the physician's certificate showed the following: "What disease has patient now? Pulmonary tuberculosis." Upon objection, the trial court did not permit a showing of the disposition of this claim, but it was shown that Brown later surrendered the policy and received a refund.

Brown died February 26, 1936, and proofs of death were submitted to the company. A part thereof was a physician's certificate, signed by the same physician who made the first three health claim certificates heretofore mentioned. One question therein and answer thereto was:

"6. (a) What was the immediate cause of death? (See instructions.) Miliary tuberculosis, paralysis of colon and pernicious anemia."

As has been noted, there was no dispute about the testimony above detailed. In addition to the above, there was much oral testimony, some tending to prove that Brown had been treated by physicians who informed him he had pulmonary tuberculosis prior to the issuance of the policy, some tending to prove that he had in the summer of 1935 been afflicted only with a bad cold, and that on September 16, 1935, he had recovered. The physician who made the three health claim certificates and the certificate on the proof of death said he saw no evidence of miliary tuberculosis on December 3, 1935, that he next visited Brown on January 15, 1936, and it had then set in. He further stated Brown did not have tuberculosis from March 17, 1935 (date of application for policy), until after September 16, 1935 (date of application for reinstatement of the policy). There was also testimony by deposition that had the company been advised Brown had been informed he had tuberculosis

and was under treatment therefor, his original application would have been denied, as would his application for reinstatement. In the above statements of evidence it will be noted that in the proofs of claim for sick benefits the diagnosis was that Brown was anemic, and in the proof of death one of the immediate causes of death was pernicious anemia. Defendant's answer is susceptible of interpretation that it relied only on the concealment insofar as tuberculosis is concerned, and we therefore discuss the matter in that aspect.

After both parties had rested the company moved for a directed verdict for the reason the admitted and undisputed evidence showed that plaintiff was not entitled to recover from the defendant any more than the premium paid on the policy in suit, with interest, and which amount had been tendered into court for plaintiff's benefit. After argument, the trial court denied the motion, and the cause was submitted to the jury, which returned a verdict in favor of plaintiff and answered special questions. Post-trial motions of the defendant were all denied, and it appeals.

Although much might be written with respect to the various assignments of error, as indicated above, we shall discuss only the motion for a directed verdict, for we think the trial court erred in not sustaining it.

We do not find it necessary to determine whether or not the policy as originally applied for and issued was procured through misrepresentations of Brown. Let it be assumed it was beyond attack. There is no dispute in the testimony that the policy lapsed because of failure to pay the premium due July 8, 1935; there is no dispute that Brown applied for reinstatement on September 16, 1935, and that he then agreed that if the statements in his application for reinstatement be in any respect untrue, the company should, for a period of two years thereafter, be under no liability except to return premiums paid after the date of reinstatement. There is no dispute that in that application Brown stated he was in sound health; and that since the issuance of the policy he had had no illness or injury and had not consulted a physician. Nor is there any dispute that within the ninety days preceding reinstatement of the policy he had made three claims for sick benefits on two other companies, in each of which he represented he had some pulmonary difficulties, and as a result collected three sums of money, and that from a third company he made a claim for sick benefits in which his physician's certificate showed him to have pulmonary tuberculosis. The fact that

one of the physicians who made three of the above certificates attempted to explain away the importance of the term "pulmonary congestion" by saying Brown had recovered from it and died from miliary tuberculosis and anemia cannot be held to present a question for the jury. Even assuming that fact to be true, the company was entitled to know that Brown had claimed to be ill and had consulted physicians, one of whom diagnosed his difficulties as pulmonary congestion with bleeding, bilious, anemic, and the other of whom stated he had pulmonary tuberculosis. Neither can it be said that the statements made were not material to the risk. It may be beside the point whether either diagnosis was correct, but it is quite to the point that where Brown had collected sick benefits on such claims, that the defendant company be advised he had consulted physicians for the ailments as diagnosed. Had that fact been disclosed, the defendant company would then have been in a position where it could intelligently either accept or reject his application for reinstatement.

Appellee directs our attention to G. S. 1935, 40-418, and contends that under it no misrepresentation shall be deemed material or render the policy void unless the matter misrepresented actually contributed to the death, and that the proof here is that it did not. That statute refers to original issue of the policy; here we are limiting the inquiry to the application for reinstatement. G. S. 1935, 40-420, provides that policies must contain certain provisions, and subdivision (9) requires provision for reinstatement *inter alia* "upon evidence of insurability satisfactory to the company," and the policy sued on contained such provision. In making his application for reinstatement, and in furnishing evidence of insurability, Brown concealed facts which we think were material to the risk. If appellee's contention were sound, it would mean that Brown and his personal physician were to be satisfied of his insurability, and not the company. The answers as made were made by Brown with the expressed intention of having the company rely on them and reinstate the policy; they were relied on by the company and the policy was reinstated, and the company was thus defrauded. As was said in *Klein v. Farmers & Bankers Life Ins. Co.*, 132 Kan. 748, 297 Pac. 730:

"The fact of the examinations was a material one, and if it had been answered truthfully it would have enabled the insurance company to have pursued the inquiry as to what the blood test disclosed, and if it had learned

that the applicant was afflicted with a serious disease it naturally would have refused to insure him. In the application the applicant had agreed in specific terms that the application should constitute a part of the contract, and that the answers therein were full, complete and true and these with the conditions and benefits written therein should be the sole basis of the contract, binding alike on all persons interested under the policy to be issued. Some of the answers were not matters of the belief or opinion of the applicant, but were matters of fact which he well knew and which he answered falsely. The subject of the questions must be conceded to be material. It was incumbent upon the applicant to answer them fairly and truthfully. There should have been absolute good faith in the answers given, and misrepresentations, evasion or conscious concealment necessarily operate to defeat the contract of insurance. (*Hoover v. Royal Neighbors,* 65 Kan. 616, 70 Pac. 595; *Hiatt v. Woodmen of the World,* 107 Kan. 359, 191 Pac. 472; *Steele v. Woodmen of the World,* 115 Kan. 159, 222 Pac. 76; *Lodge v. Order of United Commercial Travelers,* 125 Kan. 26, 262 Pac. 598.)" (p. 751.)

In *Scott v. National Reserve Life Ins. Co.,* 144 Kan. 224, 58 P. 2d 1131, it was held:

"Where the proof of alleged fraud becomes so conclusive by uncontradicted evidence and written admissions showing falsehood, concealment and misrepresentations to the disadvantage of the other party to the insurance contract, the question of the existence of fraud becomes a matter of law instead of an issue of fact for the jury." (Syl.)

And in a very recent case, *Stewart v. American Life Ins. Co.,* 89 F. 2d 743, it was said:

" 'An applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties.' *Mutual Life Insurance Company of New York v. Hilton-Green,* 241 U. S. 613, 624, 36 S. Ct. 676, 680, 60 L. Ed. 1202; *Klein v. Farmers' & Bankers Life Insurance Company,* 132 Kan. 748, 297 P. 730, 731; *Moore v. Pilot Life Ins. Co.* (C. C. A. 4) 86 F. 2d 197, 199." (p. 747.)

In addition to the decisions quoted from and the cases therein cited, see *Insurance Co. v. Brubaker,* 78 Kan. 146, 96 Pac. 62; *Day v. Nat'l Reserve Life Ins. Co.,* 144 Kan. 619, 62 P. 2d 925; *Depee v. Nat'l Life & Accident Ins. Co.,* 144 Kan. 751, 62 P. 2d 923; *Nat'l Reserve Life Ins. Co. v. Humphreys,* 145 Kan. 373, 65 P. 2d 296, in which materiality of representations is considered.

We do not deem it necessary to refer to the numerous cases dealing with good faith, mistake as to health, etc., for in this case, while the applicant for reinstatement might possibly have believed himself to be in sound health on September 16, 1935, under the undisputed evidence he could not but have known he had had an illness, that he had consulted physicians and that they had diagnosed his

trouble as pulmonary congestion with bleeding, and as pulmonary tuberculosis. Those matters having all been shown by the undisputed evidence, the defendant's motion for a directed verdict should have been allowed. Had it been allowed, judgment would have been rendered against defendant only for the amount of premiums and interest, as tendered into court, and for costs accrued to the time of the tender (G. S. 1935, 60-2936).

The judgment of the trial court is reversed and the cause remanded with instructions to render judgment for the plaintiff for $94.66 and costs accrued to the time of the tender.