(350 P.3d 1126)
No. 111,016

MICHAEL NEY, *Appellant*, v. FARM BUREAU LIFE INSURANCE COMPANY, *Appellee*.

Opinion filed May 29, 2015.

*Michael J. Wyatt,* of Mann Law Offices, of Hutchinson, for appellant.

*Arthur S. Chalmers,* of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellee.

Before STANDRIDGE, P.J., GREEN, J., and JOHNSON, S.J.

STANDRIDGE, J.: After the death of Shawn Ney (Shawn), his father, Michael Ney (Michael), filed a claim under a life insurance contract naming Shawn as the insured and Michael as the sole beneficiary. Farm Bureau Life Insurance Company (FBL) denied payment of the death benefit under the policy. Michael then filed a lawsuit seeking the policy value of the death benefit. The district court granted summary judgment in favor of FBL. On appeal from the court's judgment, Michael argues the district court erroneously relied on K.S.A. 40-420(9) to find that FBL could contest payment of the death benefit under a life insurance policy despite the fact

that the policy did not affirmatively authorize FBL to do so. Michael also argues on appeal that the misrepresentations made by his son in the application for reinstatement of the lapsed policy were not material under K.S.A. 40-418.

## FACTS

Shawn was the insured under a $250,000 life insurance policy issued by FBL on June 25, 2009 (the Policy). On July 10, 2010, Shawn shot his wife and another man, killing the man. Shawn and his wife divorced in September 2010. After the divorce, Shawn removed his wife as a beneficiary under the Policy and instead made Michael the primary beneficiary.

In August 2010, the Policy lapsed due to nonpayment of premiums. FBL sent a lapse notice informing Shawn that the Policy was no longer in force. The notice stated that Shawn could apply to reinstate the Policy by answering certain questions contained in the notice and returning it to FBL along with payment of the unpaid premiums, plus interest. Michael received the notice and took it and other documents to Shawn at the jail where Shawn was being held prior to his trial.

Michael did not deliver the documents to Shawn directly but rather gave them to a staff person at the jail who, in turn, brought them to Shawn. Michael waited 15 or 20 minutes for Shawn to complete the paperwork. Shawn was required to complete a portion of the notice that read:

"I (we) represent that neither the INSURED NOR ANY OTHER PERSON INSURED UNDER THIS POLICY has:
"◊ ◊ ◊

"c) consulted or been examined or treated by any physician or practitioner . . .
"◊ ◊ ◊

"Any exceptions to these representations are explained below:
"Name of Person(s)          Details of Exception (include names
"With Exceptions(s)          of Doctors, Hospitals & Dates):
"_____     _____"

Shawn signed the lapse notice on September 16, 2010. He did not list any exceptions to his representations. FBL received Shawn's application to reinstate the Policy, *i.e.*, the completed lapse notice,

on September 24, 2010. On the basis of Shawn's representations in the application, FBL reinstated the Policy on September 25, 2010. Shawn died on December 10, 2011.

As the sole beneficiary of the Policy, Michael filed a claim with FBL in late December 2011. FBL performed an investigation after it received the claim. As a result of this investigation, FBL discovered that, contrary to Shawn's representations in his application to reinstate the Policy, Shawn had been examined and treated by several doctors after June 25, 2009. For example, FBL learned that Shawn visited several doctors between June 2010 and September 2010 and received diagnoses or treatment for a number of medical issues, including anxiety, depression, bipolar disorder, diabetes, migraine headaches, chest pain, and suicidal ideation. FBL also learned that Shawn was evaluated by a licensed psychologist on August 23, 2010, and September 13, 2010, in order to determine his competency to stand trial.

In May 2012, FBL denied Michael's claim and rescinded the Policy. Michael filed a petition naming Farm Bureau Financial Services and Arthur Neil Cordre, the local insurance agent who accepted Shawn's reinstatement application, as defendants. After discovering that he had sued the wrong entity, the court permitted Michael to substitute FBL as a defendant in place of Farm Bureau Financial Services. Thereafter, Michael, FBL, and Cordre filed cross-motions for summary judgment.

In support of his motion for summary judgment, Michael argued the following language in the Policy effectively prohibited FBL from denying Michael's claim and rescinding the Policy: "[FBL] will not contest payment of the death benefit for any reason after this policy has been in force during your lifetime for two years from the date of issue . . . ." Although the Policy specifically allowed an insured to reinstate the Policy within 5 years of the due date for an unpaid premium under certain conditions, Michael noted that the Policy did not contain any specific language allowing FBL to contest a claim for any period after the Policy was reinstated.

In response to Michael's motion for summary judgment, FBL acknowledged that the Policy did not include specific language allowing it to contest a claim or rescind the Policy after reinstate-

ment but asserted that the absence of such language was irrelevant because it had a right to rescind the policy *ab initio* under the common law. FBL also argued that K.S.A. 40-420(9) provided a statutory right to rescind the policy on the basis of fraud or misrepresentation of material facts pertaining to the reinstatement.

The district court granted FBL's motion for summary judgment and denied Michael's motion. Relying on K.S.A. 40-420(9), the court held the reinstated policy was contestable on account of fraud or misrepresentation of material facts pertaining to the reinstatement for 2 years, which was the same contestability period stated in the Policy when it was originally issued. Finding no reasonable juror could conclude that Shawn intended anything other than suicide when he overdosed on medication he was taking to treat his depression, the court held that the omissions in Shawn's application for reinstatement were material under K.S.A. 40-418 and that, as a result, the Policy was rendered void.

Michael filed a notice of appeal on December 2, 2013. In March 2014, at the request of Michael and Cordre, Michael's case against Cordre individually was dismissed with prejudice by the district court.

## ANALYSIS

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court must resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the nonmoving party. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 962, 298 P.3d 250 (2013).

Michael argues that it is he, and not FBL, that was entitled to summary judgment. He argues that because the Policy did not specifically authorize FBL to contest payment of the death benefit at any time after the initial 2-year contestability period, FBL may not deny his claim or rescind the Policy.

The parties do not dispute that the contract is silent as to any right of FBL to contest payment of the death benefit or rescind the policy after the initial 2-year contestability period. At first glance, the contractual clause establishing that initial contestability period appears to be absolute, stating that FBL "will not contest payment of the death benefit *for any reason* after this policy has been in force during Your lifetime for two years from the date of issue . . . ." (Emphasis added.) But in addition to the language of the Policy itself, the Kansas insurance statutes provide important guidance.

K.S.A. 40-420 lists several provisions that must be included in all life insurance policies issued in Kansas except for industrial insurance, annuities, and pure endowments. The Policy did not fit into any of these exceptions, so the requirements listed in K.S.A. 40-420 must be read into the Policy. See *Missouri Medical Ins. Co. v. Wong*, 234 Kan. 811, 819, 676 P.2d 113 (1984) ("[W]here a policy of insurance is issued to an insured in compliance with the requirement of a statute, the pertinent provisions of the statute must be read into the policy, and no provisions of the policy in contravention of the statute can be given effect."). For instance, K.S.A. 40-420(2) requires that all policies contain:

"(2) A provision that, except as otherwise expressly provided by law, the policy together with the application, if a copy thereof be endorsed upon or attached to the policy, shall constitute the entire contract between the parties and shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than two years from its date, *except for nonpayment of premiums* . . . ." (Emphasis added.)

The Policy, in apparent compliance with this subsection, contains a clause limiting FBL's right to contest payment of the death benefit to a 2-year period following issuance of the policy.

More relevant to the issue presented on appeal is K.S.A. 40-420(9), which requires insurance policies contain the following:

"A provision that if in event of default in premium payments the value of the policy shall have been applied to the purchase of other insurance as provided in this section, and if such insurance shall be in force and the original policy shall not have been surrendered to the company and canceled, the policy may be reinstated within three years from such default, upon evidence of insurability satisfactory to the company and payment of arrears of premiums and the payment or reinstatement of any other indebtedness to the company upon its policy, with interest, . . . and that such reinstated policy shall be contestable only on account of fraud or misrepresentation of material facts pertaining to the reinstatement; for the same period of time after reinstatement as provided in the policy with respect to original issue."

Here, the Policy contained contractual language allowing it to be reinstated within 5 years, which was more generous than the law required. Although the contract differed from the statutory requirement, K.S.A. 40-420 provides that a policy "may be issued or delivered in this state which in the opinion of the insurance commissioner contains provisions on any one or more of the several foregoing requirements more favorable to the policyholder than hereinbefore required." As noted above, however, the Policy did not contain any language at all relating to FBL's right to contest payment of the death benefit for any reason following reinstatement. Michael argues that due to the missing language, K.S.A. 40-420(2) prohibits FBL from contesting the claim or rescinding the Policy because Shawn passed away outside of the 2-year time limit established by the only operative contestability clause actually written in the contract. But the language included in K.S.A. 40-420(9) lacks any meaning if the K.S.A. 40-420(2) limitation on contestability/rescission applies to a reinstated policy. If subsection (2) applied, the full 2-year period "after reinstatement" would never come into play because the Policy had to first be in place for some period of time in order to lapse and then be reinstated. Interpreted this way, there would never be a right to contest a reinstated policy once the original policy had been in force for 2 years. In addition, K.S.A. 40-420(2) contains an exception that states it does not apply when there has been a nonpayment of premium; instead, it is K.S.A. 40-420(9) that specifically applies when a policy was lapsed due to nonpayment. As the district court held, K.S.A. 40-420(9)

regarding fraud and misrepresentation must be incorporated into the Policy.

The provision of K.S.A. 40-420 allowing insurance policies to contain provisions more favorable to the policyholder arguably allows parties great latitude in fashioning insurance contracts. However, the Kansas Supreme Court ruled long ago that insurance contracts are not ordinary contracts where parties may bind themselves as they wish. See *Logan v. Victory Life Ins. Co.*, 175 Kan. 88, 93, 259 P.2d 165 (1953) (every insurance policy must contain mandatory statutory provisions no matter what the parties may wish). " 'In Kansas, "where a policy of insurance is issued to an insured in compliance with the requirement of a statute, the pertinent provisions of the statute must be read into the policy, and *no provisions of the policy in contravention of the statute can be given effect.*" ' " (Emphasis added.) *National Inspection & Repair, Inc. v. Valley Forge Life Ins. Co.*, 274 Kan. 825, 838, 56 P.3d 807 (2002); accord *Bank Savings Life Ins. Co. v. Baker*, 120 Kan. 756, 758-59, 244 P. 862 (1926) (citing "the general rule that a statute pertaining to the rights, liabilities or obligations of parties under an insurance contract are construed as a part of a policy issued when the statute is in force"). Michael acknowledges this point of law but maintains that the caselaw supporting this well-established rule is inapplicable here.

*Effect of K.S.A. 40-420(9)*

First, Michael argues that K.S.A. 40-420(9) does not actually require a life insurance policy to contain a contestability clause for periods following reinstatement. He concedes the statute requires insurance contracts to contain clauses allowing for reinstatement but argues that portion of K.S.A. 40-420 addressing contestability was not intended by the legislature to be a mandatory insurance contract provision. Instead, Michael asserts the statute merely limits the scope of such a contestability clause if it is *actually included* in a policy. Michael cites no authority or support for this argument other than the language of K.S.A. 40-420.

The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained.

This court must first attempt to ascertain legislative intent by reading the language of the statute and giving common words their ordinary meanings. When a statute is plain and unambiguous, this court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *Cady v. Schroll*, 298 Kan. 731, 738-39, 317 P.3d 90 (2014).

We are not persuaded by Michael's attempt to construe the contestability portion of K.S.A. 40-420(9) as optional. The subsection contains a single sentence that describes a provision that must be included in all insurance contracts. The statute first outlines the parameters of a reinstatement clause, which Michael concedes is a necessary part of all life insurance contracts. See K.S.A. 40-420(9). The language then immediately shifts to the subject of contestability, stating that "such reinstated policy shall be contestable only on account of fraud or misrepresentation of material facts pertaining to the reinstatement; for the same period of time after reinstatement as provided in the policy with respect to original issue." K.S.A. 40-420(9). This portion can only reasonably be read as an indispensable part of the required provision described in K.S.A. 40-420(9) as a whole. There is no language in the subsection indicating that parties to an insurance contract may choose to leave out a clause allowing for contestability of a reinstated policy. If such action were permitted, none of the requirements laid out in K.S.A. 40-420(9) would have any real meaning or effect.

Contrary to Michael's position, we conclude the plain and unambiguous language of K.S.A. 40-420(9) must be incorporated into the Policy. See *National Inspection & Repair, Inc.*, 274 Kan. at 838. This language requires insurance contracts delivered in Kansas to allow for contestability after reinstatement with some limitations. The first limitation is that the only grounds for contesting a policy are fraud or material misrepresentation of facts pertaining to the reinstatement. Second, the time limit for contesting payment is the same as the time limit for contesting payment after the policy is .originally issued. K.S.A. 40-420(9). Here, that time limit was 2 years.

*Ambiguity*

Michael also argues that the Policy is unclear or incomplete and therefore should be construed liberally as written and without regard to the provisions of K.S.A. 40-420(9). The Kansas Supreme Court has determined:

"Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear. . . . When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made. [Citation omitted.]" *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659-60, 810 P.2d 283 (1991).

But, "[t]o be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." 248 Kan. at 659.

After the provisions of K.S.A. 40-420(9) are incorporated into the Policy, the contract is not unclear or incomplete. The Policy contained a clause prohibiting FBL to contest the payment of the death benefit *for any reason* after 2 years have elapsed from the date of issue. At first glance, this clause appears to be in conflict with K.S.A. 40-420(9), which requires a different, additional 2-year period of contestability following an insurance policy's reinstatement. But the contestability language in K.S.A. 40-420(9) does not relate to the original application process or the initial contestability clause that is measured from the policy issue date. Under K.S.A. 40-420(9), the Policy could only be contested on the basis of fraud or misrepresentations of material facts *pertaining to the reinstatement*. The exercise of this right to contest is contingent on a policy lapsing for default of payments in the first place. So, the contestability language in K.S.A. 40-420(9) only allows an insurance company to contest a policy based on statements a person made in order to regain coverage under a policy that had already been terminated and was, at the time of the statements, not in force. K.S.A. 40-420(9) only governs the reinstatement process and provides a limited remedy in the event of fraud or material misrepresentation of facts in an application for reinstatement. As such, incorporating

the contestability language of K.S.A. 40-420(9) into the Policy does not contradict or obfuscate the contestability language already in the contract. Without such a contradiction, there was no ambiguity in the Policy to be resolved in favor of the insured.

For all the reasons stated above, we find FBL was within its authority to contest payment under the Policy based on allegations of fraud and misrepresentation of material fact pertaining to reinstatement because Shawn died within 2 years of the date the Policy was reinstated. But this does not end the inquiry. We now must decide whether FBL properly denied payment under the policy based on a misrepresentation of a material fact made by Shawn pertaining to the reinstatement. See K.S.A. 40-420(9).

*Materiality*

Michael does not dispute that Shawn misstated several facts in the application for reinstatement; instead, Michael claims only that the factual misstatements were not material for purposes of seeking to reinstate the policy. In support of this claim, Michael asserts the test we must apply to determine whether the misstatements were material is set forth in K.S.A. 40-418, which states:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable."

Under this statute, a false statement or omission made to "obtain or secure" a life insurance policy is only material if it concerned a cause contributing to the insured's death. See Andreas, *Misrepresentation in Insurance Applications: Kansas Law*, 62 J.K.B.A. 22, 24 (May 1993) ("Under Kansas law, an insured may lie or conceal material information in an application for life . . . insurance and still recover benefits, as long as the matter misrepresented did not contribute to the loss." [quoted with approval in *Chism v. Protective Life Ins. Co.*, 290 Kan. 645, 664, 234 P.3d 780 (2010)]).

But our Supreme Court specifically has held that the prior version of K.S.A. 40-418 (enacted in 1927) does not apply to reinstatement applications. See *Brown v. Metropolitan Life Ins. Co.*, 146

Kan. 300, 305, 69 P.2d 1110 (1937). Although a prior version, the relevant language of the statute was not changed since the original statute was enacted. Like our case, the issue in *Brown* was whether a life insurance policy could be rescinded because of untruthful answers to questions in a written application for reinstatement of a lapsed policy:

" '4. Are you now in sound health? Yes.
" '6. Have you since date of issue of the above policy—
    (*a*) Had an illness or injury? If yes, give date and particulars. No.
    (*b*) Consulted any physician or physicians? If yes, give date, and name and address of physician or physicians, and state for what illness or ailment. No.' "
146 Kan. at 302.

After trial, the jury rendered a verdict in favor of Brown's widow. In an attempt to defend the verdict rendered in her favor, Brown's widow argued on appeal that the insurance company failed to introduce sufficient evidence at trial to establish that the misstatements of fact in the reinstatement application were material, *i.e.*, *actually contributed to the death of her husband*, as required by the same statutory language in a prior version of K.S.A. 40-418. The Supreme Court disagreed, finding the questions posed and the answers provided were material for purposes of rendering the insurance contract void:

" 'Some of the answers were not matters of the belief or opinion of the applicant, but were matters of fact which he well knew and which he answered falsely. The subject of the questions must be conceded to be material. It was incumbent upon the applicant to answer them fairly and truthfully. There should have been absolute good faith in the answers given, and misrepresentations, evasion or conscious concealment necessarily operate to defeat the contract of insurance. [Citations omitted.]' " 146 Kan. at 306.

In its findings, the district court expressly declined to apply the same statutory definition of materiality set forth in the prior version of K.S.A. 40-418. The *Brown* court explained that 40-418 "refers to original issue of the policy; here we are limiting the inquiry to the application for reinstatement." 146 Kan. at 305. Instead of 40-418, the court held that 40-420(9) governed issues related to re-

instatement of an insurance contract, including the one before the court:

"G.S. 1935, 40-420, provides that policies must contain certain provisions, and subdivision (9) requires provision for reinstatement *inter alia* 'upon evidence of insurability satisfactory to the company,' and the policy sued on contained such provision. In making his application for reinstatement, and in furnishing evidence of insurability, Brown concealed facts which we think were material to the risk." 146 Kan. at 305.

Given K.S.A. 40-418 does not apply to reinstatement applications, we apply the common-law doctrine of fraudulent misrepresentation to determine whether Shawn misstated or omitted facts material to FBL's risk of reinstating the Policy. See *Scott v. National Reserve Life Ins. Co.*, 143 Kan. 678, 680, 56 P.2d 76, *modified by* 144 Kan. 224, 226, 58 P.2d 1131 (1936) (recognizing fraud to be a known misrepresentation or a nondisclosure). To establish fraudulent misrepresentation in this context, FBL must show: (1) There was an untrue statement of a material fact made by the insured or an omission of a material fact, (2) the insured knew the statement was untrue, (3) the insured made the statement with the intent to deceive or recklessly with disregard for the truth, and (4) the insurer justifiably relied on the statement and acted to its injury or damage. See *Waxse v. Reserve Life Ins. Co.*, 248 Kan. 582, 586, 809 P.2d 533 (1991); *American States Ins. Co. v. Ehrlich*, 237 Kan. 449, 452, 701 P.2d 676 (1985). "The test generally applied as to whether a misrepresentation is material, so as to permit the insurer to avoid its obligation under an insurance contract, is whether the knowledge of the truth would have reasonably influenced the insurer in accepting the risk or fixing the premium." 237 Kan. at 453.

In *Scott*, the Kansas Supreme Court specifically rejected the theory that an insurer may rescind a policy based on a negligent misrepresentation or omission. It stated:

"Before considering the facts and testimony in the case we may briefly refer to the legal distinctions that are discussed in the briefs as between fraud and misrepresentations. A mere misstatement of the actual truth unintentionally made and in good faith may not amount to fraud. It was said in *Mutual Life Ins. Co. v. Wiswell*, 56 Kan. 765, 44 P. 996 [(1896)], that a mere misstatement, unless willful and fraudulent, will not avoid the policy in the absence of a warranty of the truth

of the statement. The following statement from 14 R.C.L. 1021 is helpful in making a proper discrimination:

"'A misrepresentation in insurance is a statement of something as a fact which is untrue, and which the assured states, knowing it to be untrue, with an intent to deceive, or which he [or she] states positively as true, without knowing it to be true, and which has a tendency to mislead, such fact in either case being material to the risk.'" *Scott*, 143 Kan. at 679-80.

Typically, the materiality of a misrepresentation is a question of fact and should be resolved by the trier of fact. *Ehrlich*, 237 Kan. at 453. But in this case, there is no dispute as to any fact necessary to establish all the elements of common-law fraudulent misrepresentation. There is no dispute that Shawn made untrue statements of fact by representing in his application for reinstatement that he had not been examined or treated by any physician since the Policy was originally issued. He also knew they were untrue, as he had experienced several visits to doctors since the Policy was originally issued. These representations were made for the purpose of providing evidence of his insurability and with the knowledge that FBL may rely on them. This establishes, at the very least, a reckless disregard for the truth.

Finally, it is uncontroverted that FBL relied on the statements to its detriment because, had it known the truth about Shawn's suicidal ideations, it would not have reinstated the Policy. In its proposed list of uncontroverted facts in its motion for summary judgment, FBL asserted: "FBL would never have agreed to reinstate the Policy had it known either or both (1) Shawn Ney had, at any time had, suicidal ideations or (2) was in jail facing criminal charges." In his response, Michael agreed that this fact was uncontroverted. In other words, the parties did not dispute that Shawn's omissions in his application for reinstatement relating to his treatment for suicidal ideations affected FBL's decision to reinstate the insurance contract. And this reliance was justified because FBL had alerted Shawn in the lapse notice that it may rely on his representations.

Because there is no dispute as to any fact necessary to establish the elements of common-law fraudulent misrepresentation, FBL was entitled to judgment as a matter of law.

Affirmed.