NOT DESIGNATED FOR PUBLICATION

No. 115,878

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ATMOS ENERGY CORPORATION,
*Petitioner*,

v.

KANSAS CORPORATION COMMISSION,
*Respondent*,

and

CITIZENS' UTILITY RATEPAYER BOARD and
CONTINUUM RETAIL ENERGY SERVICES, LLC,
*Intervenors*.

MEMORANDUM OPINION

Appeal from Kansas Corporation Commission. Opinion filed September 15, 2016. Reversed and remanded.

*James G. Flaherty* and *Jeffrey A. Wilson*, of Anderson & Byrd, LLP, of Ottawa, and *James H. Jeffries, IV*, of Moore & Van Allen PLLC, of Charlotte, North Carolina, for petitioner.

*Dustin L. Kirk*, special assistant attorney general, of Kansas Corporation Commission, for respondent.

*David W. Nickel* and *Thomas J. Connors*, of Citizens' Utility Ratepayer Board, for intervenor.

Before MCANANY, P.J., BUSER and LEBEN, JJ.

*Per Curiam*:  Atmos Energy Corporation, a natural gas public utility operating in Kansas, filed an application to increase its rates with the Kansas Corporation

1

Commission (Commission). The parties submitted prefiled testimony and documents to the Commission. Shortly before the scheduled evidentiary hearing, Atmos reached a Unanimous Settlement Agreement with the Commission's Staff (Staff) and the two intervenors in the case, the Citizens' Utility Ratepayer Board (CURB) and Continuum Retail Energy Services, LLC (Continuum). The Settlement Agreement included a System Integrity Program (SIP) surcharge which was intended to facilitate Atmos' ability to replace obsolete materials in its pipeline system more rapidly than permitted by its current rate structure. The Settlement Agreement was presented to the Commission for approval with supporting testimony from all parties.

In its March 2015 order, the Commission approved the Settlement Agreement in part but denied the implementation of the SIP tariff, finding this surcharge was premature. After Atmos' petition for rehearing and clarification was denied, Atmos filed this appeal asserting that contrary to the Commission's order, the denial of the SIP tariff rendered the entire Settlement Agreement voidable. On appeal, our task is to determine whether the Commission correctly interpreted and applied various provisions in the Settlement Agreement. Concluding that the Commission erred in its interpretation of the Settlement Agreement, we reverse and remand the case to the Commission for further proceedings.

*Procedural Background*

Atmos Energy is a natural gas public utility headquartered in Olathe, Kansas. It provides retail natural gas service to approximately 131,000 customers in Kansas in over 107 communities. Consequently, Atmos' intrastate operations and rates are regulated by the Commission.

In March 2015, the Commission opened a generic docket, the "343 Docket," to investigate programs that would allow Kansas local distribution gas utility companies

2

(LDCs), such as Atmos, to more rapidly replace obsolete materials in natural gas pipelines which were considered a safety risk. In proceedings under this 343 Docket, Commission staff, LDCs, and other interested parties weighed in on the need for additional rate mechanisms to enable LDCs to finance significant upgrades in their obsolete and aging pipeline systems.

While the 343 Docket was pending, Atmos filed an application with the Commission in August 2015 seeking permission to increase its rates to customers. Atmos claimed it had incurred a gross revenue deficiency of $6.6 million for the operating year ending March 31, 2015. Pursuant to K.A.R. 82-1-231, Atmos presented extensive prefiled testimony and numerous schedules and exhibits in support of its request for higher rates. CURB and Continuum intervened in the case.

As a result of the filing, the Commission issued a procedural schedule, set hearing dates for public comment, and scheduled an evidentiary hearing for review of the application for the week of February 2, 2016. Between December 2015 and January 2016, voluminous prefiled testimony was submitted to the Commission by its Staff, CURB, and Continuum, in addition to rebuttal testimony presented by Atmos. All the testimony discussed differing viewpoints of the various economic issues relating to Atmos' rate calculations. Staff recommended a rate increase of $1.49 million, while CURB recommended a rate decrease of over $700,000.

On January 20, 2016, less than 2 weeks before the scheduled evidentiary hearing, all parties filed a joint motion with the Commission to approve a Unanimous Settlement Agreement. The motion stated that the parties had worked diligently to resolve all issues in the docket and had reached an agreement settling all disputed matters. Each party submitted testimony supporting the Settlement Agreement.

3

The Settlement Agreement provided, in part, that Atmos would be granted an overall annual revenue increase of $2,218,303. The parties agreed to an increase to Atmos' rate base, to appropriate depreciation rates, to the amount of Atmos' pre-tax rate of return, and to various other accounting matters. Further, Atmos could use the abbreviated rate setting process set forth in K.A.R. 82-1-231(b)(3) to update rates for certain capital costs completed after September 2015; these were capital costs not included in (1) Atmos' proposed SIP surcharge or in (2) a GSRS surcharge permitted under the Gas Safety and Reliability Policy Act, K.S.A. 2015 Supp. 66-2201 *et seq.* In exchange, Atmos would not request any other change to its base rates prior to an effective date of March 1, 2019. But this 3-year moratorium would not preclude Atmos from changing rates or tariffs to recover appropriate costs for previously approved cost adjustments as well as the SIP tariff included in the Settlement Agreement.

The parties also agreed that Atmos could implement a SIP surcharge mechanism as a 5-year pilot program to recover capital expenditures incurred in the accelerated replacement of obsolete pipe. Atmos' recovery under the SIP would be limited to a 5-year total of $75 million, and Atmos would submit a 5-year plan for its replacement process. All annual capital expenditures would be reviewed by Staff and CURB and approved by the Commission. Finally, the SIP surcharge mechanism would be subject to any changes or additions that may be required so that the SIP complied with any Commission decision issued in the 343 Docket.

The final two paragraphs of the Settlement Agreement form the heart of the dispute in this appeal:

"43. This Settlement represents a negotiated settlement that fully resolves the issues in this docket among the Parties. The Parties represent that the terms of this Settlement constitute a fair and reasonable resolution of the issues addressed herein. Except as specified herein, the Parties shall not be prejudiced, bound by, or in any way

4

affected by the terms of this Settlement (a) in any future proceeding; (b) in any proceeding currently pending under a separate docket; and/or (c) in this proceeding should the Commission decide not to approve this Settlement in the instant proceeding. If the Commission accepts this Settlement in its entirety and incorporates the same into a final order without material modification, the Parties shall be bound by its terms and the Commission's order incorporating its terms as to all issues addressed herein and in accordance with the terms hereof, and will not appeal the Commission's order on these issues.

. . . .

"44. Except as mentioned in this paragraph, the provisions of this Settlement have resulted from negotiations among the parties and are interdependent. Except as mentioned in this paragraph, in the event the Commission does not approve and adopt the terms of this Settlement in total, it shall be voidable and none of the Parties shall be bound, prejudiced, or in any way affected by any of the agreements or provisions hereof. Further, in such event, this Settlement shall be considered privileged and not admissible in evidence or made a part of the record in any proceeding. This provision shall not apply to (1) the Parties' agreement to recommend a March 1, 2016, effective date for the rate increase; or (2) the Parties' agreement relating to the SIP tariff should the Commission elect to defer to the 343 Docket a decision on any of the agreed upon provisions herein regarding Atmos Energy's SIP tariff."

At the February 2, 2016, evidentiary hearing, the Commission admitted all of the prefiled testimony and exhibits and heard opening statements from the parties. Atmos' attorney advised the Commission that the Settlement Agreement resolved all the issues raised in the testimony of the witnesses. Counsel summarized the settlement terms including the agreed 3-year rate moratorium and the SIP tariff, "which [was] a big part of the Settlement." Counsel noted that three of the issues—the abbreviated rate case, the 3-year moratorium, and the SIP surcharge—collectively "establish[ed] a Regulatory Plan that [would] allow Atmos Energy a reasonable opportunity to earn its authorized return on its investment while continuing to make significant investment in what [was referred] to as non growth safety-related capital projects without having to file annual rate cases."

5

Several Commissioners asked questions regarding the SIP surcharge as it related to the issues in the 343 Docket, but no questions were raised regarding the effect a denial of the SIP would have on the balance of the Settlement Agreement. Nor was there any inquiry as to whether the parties were willing to waive the 240-day deadline for Commission action on Atmos' rate application.

Staff's witness testified that the SIP mechanism in this case was the culmination of a lot of work and constituted a "good product" balancing the interests of the utility and consumers. The witness recognized that other gas companies in the 343 Docket might suggest alternatives, but the SIP here was a good solution and was the mechanism supported by Staff in the 343 Docket. Counsel noted that the Settlement Agreement contained a provision stating that *deferment* of a SIP determination to the 343 Docket would not void the Settlement Agreement, but Staff advocated for immediate adoption of the SIP in this case.

A witness who submitted prefiled testimony on behalf of CURB also testified in support of the Settlement Agreement.

On March 17, 2016, the Commission issued an order approving all the terms of the Settlement Agreement except for the provision relating to the SIP tariff. In discussing the SIP tariff, the Commission noted that it opened the 343 Docket to conduct industry-wide discussions about modifying the GSRS or to consider other mechanisms to improve natural gas pipelines' system integrity. The Commission found the 343 Docket was intended to be a precursor to individual SIP-type mechanisms and that approval of Atmos' proposed SIP tariff was premature. The Commission opined that in spite of its rejection of the SIP tariff provision in the Settlement Agreement, the remainder of the Settlement Agreement was still binding on the parties. The Commission noted that the SIP or similar programs could be considered in future rate cases but not before the conclusion of the 343 Docket.

Commissioner Albrecht dissented in part, finding that the purposes of the SIP were appropriate in funding a quicker replacement of aging pipeline infrastructure, was appropriately limited in scope and duration, and had been agreed to by all parties.

Atmos filed a Petition for Reconsideration and Clarification as required by K.S.A. 66-118b and K.S.A. 2015 Supp. 77-529(a). Atmos requested the Commission to reconsider its denial of the SIP tariff or, in the alternative, to clarify the order. Atmos asserted that the Commission's rejection of the SIP tariff provision in the Settlement Agreement rendered the other terms of the Settlement Agreement voidable. Staff agreed with Atmos' arguments and confirmed the intent of the parties with respect to the operation of the interdependence provision in the agreement. The majority of the Commission denied the Petition for Reconsideration and Clarification. Again, Commissioner Albrecht dissented.

Atmos then filed its petition for judicial review with this court pursuant to K.S.A. 66-118b. CURB has intervened as an interested party.

*Standard of Review*

The scope of our review is governed by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq*., and specifically by K.S.A. 2015 Supp. 77-621(c). See K.S.A. 66-118a(b); *Bluestem Telephone Co. v. Kansas Corporation Comm'n*, 52 Kan. App. 2d 96, 107, 363 P.3d 1115 (2015). Atmos contends that it is entitled to relief under two subsections of K.S.A. 2015 Supp. 77-621(c): (1) because the Commission "erroneously interpreted or applied the law," K.S.A. 2015 Supp. 77-621(c)(4), by misapplying Kansas contract law in interpreting the Settlement Agreement, and (2) because the Commission's factual determination of the parties' intent is not supported by substantial evidence, K.S.A. 2015 Supp. 77-621(c)(7). Atmos has not made a claim for relief under K.S.A. 2015 Supp. 77-621(c)(8), which attacks the quality of the agency's reasoning through a

7

claim that its order is arbitrary, capricious, or "otherwise unreasonable." See *In re Protests of Oakhill Land Co.*, 46 Kan. App. 2d 1105, 1115, 269 P.3d 876 (2012). Atmos bears the burden of proving the invalidity of the Commission's action. K.S.A. 2015 Supp. 77-621(a)(1); *Bluestem Telephone Co.*, 52 Kan. App. 2d at 107.

The issue before us involves the Commission's interpretation of the Settlement Agreement. We exercise unlimited review over the interpretation and legal effect of written instruments, and we are not bound by the Commission's interpretation of the Settlement Agreement. See *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

*Discussion*

The Commission and CURB argue that paragraph 44 of the Settlement Agreement is unambiguous and, based on the "plain language" of the agreement, the Commission's denial of the SIP surcharge did not render the agreement voidable.

Whether a written instrument is ambiguous is an issue of law which we review de novo. *Waste Connections of Kansas, Inc. v. Ritchie Corp*., 296 Kan. 943, 964, 298 P.3d 250 (2013). A contract provision is not ambiguous merely because the parties disagree over its meaning. Such a provision is ambiguous only if two or more meanings can reasonably be construed from the contract. *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 313 P.3d 808 (2013). To be ambiguous, the provision must contain language of "'doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language.' [Citation omitted.]" *Ney v. Farm Bureau Life Ins. Co.*, 51 Kan. App. 2d 562, 571, 350 P.3d 1126 (2015), *rev. denied* 303 Kan. ___ (January 25, 2016). In our analysis we do not strain to find an ambiguity where, in common sense, there is none. *American Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1059, 179 P.3d 1104 (2008). Nor do we focus our attention only on one particular

8

provision but, rather, consider the contract in its entirety. The law favors reasonable interpretations, and we reject results which vitiate the purpose of the agreement or render its terms an absurdity. *Waste Connections of Kansas, Inc*., 296 Kan. at 963.

Here, the Settlement Agreement had three primary sections. First, it described Atmos' application and its general revenue request and rate base adjustments. Second, it described in general terms the positions of Staff and CURB regarding Atmos' revenue requirement as well as their position on Atmos' request for a SIP surcharge. Third, it set forth the terms of the settlement including a stipulated revenue requirement, agreed depreciation rates and a pre-tax rate of return, and an agreement on various accounting issues.

The final three elements of the agreement are key to the interdependency provision at the center of this dispute. First, the parties agreed that Atmos may file an abbreviated rate case to update rates in order to include various capital costs closed after September 30, 2015. Second, and subject to certain exceptions, Atmos may not make any other change to its base rates before the effective date of March 1, 2019. Third, Atmos may implement a SIP surcharge mechanism through a 5-year pilot project to recover capital expenditures incurred in the accelerated replacement of obsolete pipe. This section of the agreement contains nearly three pages of scheduling and approval procedures relating to the implementation of the SIP tariff.

As noted earlier, the final two paragraphs of the Settlement Agreement describe the effects of this negotiated settlement and the interdependency of its various provisions. As stated in paragraph 43, the parties are not bound by the terms of the Settlement Agreement if the Commission does not approve it "in its entirety . . . without material modification." As stated in paragraph 44,

9

"[T]he provisions of this Settlement have resulted from negotiations among the Parties and are interdependent. Except as mentioned in this paragraph, in the event the Commission does not approve and adopt the terms of this Settlement in total it shall be voidable. . . . This provision shall not apply to . . . the Parties' agreement relating to the SIP tariff should the Commission elect to defer to the 343 Docket a decision on any of the agreed upon provisions herein regarding Atmos' Energy's SIP tariff."

The Commission contends that the plain and unambiguous language of paragraph 44 makes the SIP tariff provision an exception to the interdependence provision. As we understand its argument, the Commission contends that the interdependence provision, which would make the Settlement Agreement voidable, does not apply when the Commission merely deferred a decision on the SIP tariff to the 343 Docket; and this "deferment of a 'decision'" was accomplished by the Commission denying the SIP tariff in the present case. This is apparently premised on the requirement that the Commission render its decision on Atmos' application within a 240-day deadline and deferring the decision on the SIP tariff issue rather than deciding it would have resulted in the SIP tariff being automatically approved. Thus, according to the Commission, in this context its denial of the SIP tariff was not a denial; it was a deferral.

But if at the hearing to approve the Settlement Agreement the Commission had simply asked the parties if they were willing to waive the 240-day decision deadline, it could have expressly deferred the SIP tariff provision to the 343 Docket notwithstanding the 240-day deadline, rather than now relying on the rather curious characterization of its decision to deny the SIP tariff provision in the Settlement Agreement as a "deferment of a 'decision.'"

We conclude that the unambiguous language of paragraph 44 established that the SIP exception applied only if the Commission *deferred the decision* to the 343 Docket. But here, the Commission simply denied the SIP tariff completely as premature. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the

10

agreement or render it an absurdity should be avoided. *Waste Connections of Kansas, Inc.*, 296 Kan. at 963. The Commission's interpretation of the agreement was unreasonable and contrary to Kansas law.

The Commission also rejected Atmos' argument that the SIP tariff was an important factor in agreeing to the 3-year moratorium on rates. The Commission asserts that the only impetus for the 3-year rate moratorium was the agreement to allow Atmos to file an abbreviated rate case for costs incurred through late 2015, not the SIP tariff. But this assertion ignores the language in paragraph 20, which provides that notwithstanding the 3-year moratorium Atmos could change rates or tariffs to recover costs under various "pass-through" cost provisions, including "GSRS tariffs and the SIP tariff included in this Settlement."

Pass-through mechanisms and similar mechanisms are becoming more common due to the general rule that capital costs for new plants, generators, or other infrastructure facilities are allowed into rates only when they become "used and required to be used" in services to the ratepayers. *Kansas Industrial Consumers Group, Inc. v. Kansas Corporation Comm'n*, 36 Kan. App. 2d 83, 97, 138 P.3d 338, *rev. denied* 282 Kan. 790 (2006); see K.S.A. 2015 Supp. 66–128 (property that has not been completed and dedicated to commercial service shall not be deemed used and required to be used in services to the public except under specific circumstances). Pass-through mechanisms permit utilities to achieve some form of financial recovery for specific costs, including capital costs, without the expenses of filing an expensive, voluminous rate case. See 36 Kan. App. 2d at 87, 97-98.

Under the terms of the Settlement Agreement, preserving Atmos' right to pursue the recovery of costs under various "pass-through" cost provisions such as "the SIP tariff included in this Settlement" was important to Atmos in agreeing to the 3-year moratorium on any rate increase.

11

The Commission was not obligated to approve the Settlement Agreement if it found the SIP surcharge unacceptable. It could have rejected the Settlement Agreement as an attempt by the parties to "tie the Commission's hands" with respect to the outcome of the 343 Docket. But reading the contract *in pari materia*, the Commission's decision that the agreement permitted the outright rejection of the SIP tariff without rendering the remaining provisions unenforceable was based on an incorrect interpretation of the Settlement Agreement. The language in paragraph 44, when read in its entirety and with the remaining provisions of the agreement, makes it clear that for the Settlement Agreement to remain enforceable without the SIP tariff provision, the Commission had to explicitly defer the SIP tariff issue to the 343 Docket for a decision. That is not what happened here. The Commission's outright rejection of the SIP tariff provision rendered the balance of the agreement voidable.

We conclude that the Commission incorrectly interpreted the Settlement Agreement. The Commission's order granting in part and denying in part the Settlement Agreement, together with its order determining the Settlement Agreement remained otherwise binding on the parties, is reversed. The matter is remanded to the Commission for further action consistent with this opinion.

Reversed and remanded.